RICHARD T. McDONOUGH, THOMAS J. MILANO AND THOMAS M. GILMARTIN, PLAINTIFFS-APPELLANTS, v. JOHN ROACH, JR., DEFENDANT-RESPONDENT.

Argued April 24, 1961—Decided June 5, 1961.

Mr. *Charles W. Hutchinson* argued the cause for appellants (*Messrs. Lamb, Langan and Blake,* attorneys).

Mr. *Thomas L. Morrissey* argued the cause for respondent (*Messrs. Carpenter, Bennett and Morrissey,* attorneys; Mr. *John C. Heavey, Jr.,* and Mr. *Laurence Reich,* on the brief).

The opinion of the court was delivered by

WEINTRAUB, C. J.    In November 1959 defendant was elected Mayor of the Town of Dover and also a member of the Board of Chosen Freeholders of Morris County.    On January 1, 1960 he was inducted into the office of mayor and on the following day he entered office as a member of the governing body of the county.    The issue is whether he may hold both posts notwithstanding the common-law bar

against dual holding of incompatible offices. The trial court held he could. We certified plaintiffs' appeal before the Appellate Division considered it.

We recently canvassed the subject in *Jones v. Mac-Donald,* 33 *N. J.* 132 (1960). We there repeated from *State ex. rel. Clawson v. Thompson,* 20 *N. J. L.* 689 (*Sup. Ct.* 1846), the following statement of the basic rule:

"* * * Where there is no express [constitutional or statutory] provision, the true test is, whether the two offices are incompatible in their natures, in the rights, duties, or obligations connected with or flowing out of them. Offices, says Bacon, are incompatible or inconsistent, when they cannot be executed by the same person; or when they cannot be executed with care, and ability; or where one is subordinate to, or interferes with another, *Bac. Abr. Tit. 'Office' K."*

Upon that test we held a councilman of a municipality could not also be a member of the county board of taxation because of conflicting duties with respect to tax appeals and the equalization by the county board of the aggregates of real property for the purpose of the allocation of the cost of county government. We pointed out that the common-law doctrine is not limited to cases in which one office is subordinate to the other, but rather embraces as well all situations in which under the established scheme of government "the duties of office clash in their demands with the result that the incumbent must choose between them * * *. An officer cannot serve two masters with conflicting statutory roles." (33 *N. J.,* at *p.* 137)

We see no meaningful distinction between *Jones* and the present case.

Here the Legislature has authorized the county to contract with a municipality with respect to sundry subjects. *N. J. S. A.* 40:4–14 (municipal audit); *N. J. S. A.* 40:9A–1 and 2 (federation of libraries); *N. J. S. A.* 40:12–9 (joint acquisition and operation of playgrounds and other recreational facilities); *R. S.* 40:13–1 (public health service); *N. J. S. A.* 40:23–6.23 (distribution of federal

surplus commodities); *R. S.* 40:23–14 and *R. S.* 40:48–18 (public improvements and works and rendition of various services); *R. S.* 40:23–19 (disposal of county sewage); *R. S.* 40:29–3 (improvements relating to watercourses); *N. J. S. A.* 40:30–21 (drainage projects); *R. S.* 40:32–5 (construction of public buildings for joint use); *R. S.* 40:56–17 (local improvements); *R. S.* 40:56–48 and 50, *R. S.* 40:67–25, and *R. S.* 27:16–70 (road improvements); *R. S.* 40:62–21 (supply of electricity, gas, steam, etc.); *R. S.* 40:69–4 (deepening and widening of stream channels).

In all of these matters the terms upon which the project is to be pursued are left to the agreement of the public bodies. In the negotiations the county board is bound to consider the interests of all of its citizens while the local governing body has a like obligation to the citizenry of the municipality alone. No man, much less a public fiduciary, can sit on both sides of a bargaining table. He cannot in one capacity pass with undivided loyalty upon proposals he advances in his other role. The same clash of obligations would also affect the exercise of the county's power to take over a municipal road with local consent, *R. S.* 27:16–5 and 6, and the exercise of municipal power to take over a county road with the county's consent, *R. S.* 27:16–71. The offices are accordingly incompatible. It was so held in like circumstances in *People ex rel. Kraemer v. Bagshaw,* 55 *Cal. App.* 2d 155, 130 *P.* 2d 243 (*D. Ct. App.* 1942).

Defendant urges that every member of a county board must experience the same clash of interest by virtue of residence in one of its communities. Upon this basis he seeks to invoke *Reilly v. Ozzard,* 33 *N. J.* 529 (1960), in which we held there was no common-law incompatibility between the offices of municipal attorney and legislator. The result there rested upon a finding that the municipal attorney was not engaged to advance bills before the Legislature on behalf of the municipality. We differentiated between an individual interest and an obligation of office, saying that incompatibility exists when "the duties clash, inviting the

incumbent to prefer one obligation to another" (at *p.* 543). We added, in terms which embrace the situation now before us (at *p.* 545):

"* * * And if the office of municipal attorney (or any other local office) were specifically charged with the duty thus to lobby, that obligation would plainly be incompatible with the duty of a legislator and would bar dual holding of the offices. Here, however, the office of township attorney does not hold that duty and hence defendant does not face the prospect as legislator of passing upon a position advanced in discharge of a duty of his other office."

It is of no moment that the statutes listed above do not mandatorily require the political divisions of government to act. A power to act imports a duty to act when the public interests suggest to the unfettered official judgment that something should be done. If anything, the existence of discretion as to whether, when, and upon what basis to act, calls for a greater margin of freedom from the distracting demands of another office. The significant fact is that the Legislature entrusted these matters to the judgment of the several public bodies and thereby charged their officers with the obligation to exercise their authority in the best interests of their respective constituents. Hence, in the words quoted above from *State ex rel. Clawson v. Thompson,* the offices are incompatible "in the rights, duties, or obligations connected with or flowing out of them."

We add, as we did in *Jones v. MacDonald* (33 *N. J.,* at *p.* 138), that "It is no answer to say that the conflict in duties outlined above may never in fact arise. It is enough that it may in the regular operation of the statutory plan. 'If the duties are such that placed in one person they might disserve the public interests, or if the respective offices might or will conflict even on rare occasions, it is sufficient to declare them legally incompatible.' * * *"

Defendant urges the history of county government inferentially reveals legislative approval of the dual office-holding here involved. The Legislature is the final arbiter of public policy and of course we must respect its will.

We cannot, however, detect a purpose to restrain the common-law doctrine.

The point is sought to be grounded in the fact that anciently the members of all county boards were severally elected from local political divisions, as indeed is still the case in Atlantic, Cumberland, Gloucester, and Salem counties. From this we are asked to infer the Legislature intended to authorize a man to be an officer in the government of both a county and a municipality. The premise is hardly sufficient to sustain the claimed inference. And of course, if the claimed inference could be drawn from that pattern of election, it would be difficult to find that it pervades as well legislation under which counties, including Morris County, elect "small" boards at countywide polls.

At any rate, we cannot accept defendant's assumption that the board of chosen freeholders was ever a mere association of local representatives dedicated solely to their respective community interests. It seems more likely that the Legislature authorized regional representation to prevent domination by a populous portion of a county. It must be kept in mind that "Historically the county was solely a subdivision of the State constituted to administer state power and authority. It differed from a municipality in that, whereas a municipality was created upon the request or with the consent of the inhabitants to act both as a body politic on behalf of the State and also as a representative of the inhabitants for their local convenience in its so-called corporate or proprietary capacity, the county on the other hand was created by the State without regard to local wishes and solely to serve as a body politic." *Bergen County v. Port of N. Y. Authority,* 32 *N. J.* 303, 312 (1960). See also *Collier, County Government in New Jersey* 61 (1952). Thus the role assigned to county government negates the notion that its officers were merely representatives of the provincial interests of the several election districts, and hence dissipates the premise from which it is argued that legislative approval of dual officeholding should be inferred.

██ It may well be that at one time both offices could have been held because no conflict existed under the then frame of government. Needless to say, the common-law doctrine embraces as they arise all situations which come within the reason for the rule. We note that *Westcott v. Scull*, 87 *N. J. L.* 410, 418 (*Sup. Ct.* 1915), found these offices incompatible because under a statute there applicable the governing body of the city could fill a vacancy in the office of the chosen freeholder elected by the voters of the municipality. That case serves to reveal that incompatibility will come to pass when a statute appends to an office a power or duty which generates a conflict. So here, the Legislature has in relatively recent years by the statutes cited above assigned to county and municipal governments sundry functions which invite a clash of the obligations each unit of government owes to its respective citizens. As government becomes more complex and additional roles are assigned, the opportunities for dual officeholding must inevitably diminish. What remains constant is the demand of sound public policy that the incumbent in public office shall act with undivided devotion to duty.

As pointed out above, defendant was elected to both offices on the same day and later entered upon the offices on successive days. It is generally held the common-law rule leads to loss of the office first accepted. *De Feo v. Smith*, 17 *N. J.* 183, 190 (1955). The circumstances of this case invite the question whether that rule should be applied inexorably or whether the officeholder should be permitted to choose between the offices. The public interest is vindicated when the forbidden dual holding is ended. In the absence of bad faith—we find none here—it is just and consonant with the public welfare to permit an election. Overall there are several reasons to do so. As we have already observed, conflicts may be initiated by new legislation and hence may enter a scene unappreciated by a conscientious public servant. There may be a striking disparity in the importance of the two offices. In some settings the

forfeiture of the earlier one may disappoint the electorate itself. In *Lofland v. Hilton,* 80 *N. J. L.* 528, 529 (*Sup. Ct.* 1910), the court said that "Sometimes the dignity of the two offices is regarded" in determining which should be lost. In Pennsylvania the official seems to be accorded an opportunity to choose. *Commonwealth ex rel. Crow v. Smith,* 343 *Pa.* 446, 23 *A.* 2d 440, 442, note 3 (*Sup. Ct.* 1942); *Commonwealth ex rel. Ryan v. Haeseler,* 161 *Pa.* 92, 28 *A.* 1014 (*Sup. Ct.* 1894).

We are of the view that in the circumstances defendant should be permitted an election. Accordingly the judgment is reversed and the matter remanded to the trial court with directions to enter final judgment declaring the office of mayor to be vacant unless defendant shall file with that court at or before the return date of the motion for judgment a written statement that he elects to retain the office of mayor, in which event the judgment shall declare vacant the office of chosen freeholder.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For affirmance*—None.