GEORGE AHTO, PLAINTIFF-APPELLANT, v. CHARLES WEAVER AND HERMAN KLEIN, DEFENDANTS-RESPONDENTS.

Argued November 20, 1961—Reargued January 22, 1963—Decided March 4, 1963.

*Mr. Theodore W. Trautwein* argued the cause for plaintiff-appellant.

*Mr. Joseph V. Cullum* argued the cause for defendants-respondents.

The opinion of the court was delivered by

HALL, J. At issue in this litigation is whether the defendants Weaver and Klein hold incompatible public offices in violation of the common law prohibition. The plaintiff, a taxpayer, sought their ouster from all of the offices they respectively occupy "or such other judgment as may be equitable and just." The Law Division, on cross-motions for sum-

mary judgment, decided for defendants. The ensuing appeal reaches us on our grant of certification, applied for while the matter was awaiting hearing in the Appellate Division. *R. R.* 1:10-1A.

When the case was first argued, we were advised of proposed legislation then pending which would substantially modify the common law rule. We therefore deferred our decision to await the outcome. The bill received legislative approval on May 7, 1962, but was returned by the Governor on November 19, 1962 for reconsideration and recommended amendment. It ultimately became *L.* 1962, *c.* 173, approved December 3, 1962 and effective immediately. We thereafter called for supplemental briefs and reargument so that the matter might be determined with due regard to the new legislation since it is expressly made applicable to incumbents of affected offices and positions. Sec. 4(b).

The test of the common law rule that one may not hold incompatible offices is, as the rule itself, an ancient one. The classic statement in this state is found in *State ex rel. Clawson v. Thompson,* 20 *N. J. L.* 689 (*Sup. Ct.* 1846) :

"\* \* \* Where there is no express [constitutional or statutory] provision, the true test is, whether the two offices are incompatible in their natures, in the rights, duties, or obligations connected with or flowing out of them. Offices, says Bacon, are incompatible or inconsistent, when they cannot be executed by the same person; or when they cannot be executed with care, and ability; or where one is subordinate to, or interferes with another, *Bac. Abr. Tit. 'Office' K."*

An accurate modern expression is set forth in *Reilly v. Ozzard,* 33 *N. J.* 529 (1960) :

"\* \* \* Incompatibility is usually understood to mean a conflict or inconsistency in the functions of an office. It is found where in the established governmental scheme one office is subordinate to another, or subject to its supervision or control, or the duties clash, inviting the incumbent to prefer one obligation to another." (at *p.* 543).

The reason behind the prohibition is succinctly summarized in *Jones v. MacDonald,* 33 *N. J.* 132 (1960) :

"Public policy demands that an office holder discharge his duties with undivided loyalty. The doctrine of incompatibility is intended to assure performance of that quality. Its applicability does not turn upon the integrity of the person concerned or his individual capacity to achieve impartiality, for inquiries of that kind would be too subtle to be rewarding. The doctrine applies inexorably if the offices come within it, no matter how worthy the officer's purpose or extraordinary his talent. *DeFeo v. Smith*, 17 *N. J.* 183, 188 (1955)." (33 *N. J.*, at *p.* 135)

*L.* 1962, *c.* 173 provides:

"1. It shall be lawful for a person to hold simultaneously an elective county office and an elective municipal office.

2. It shall be lawful for a member of the Legislature of the State to hold simultaneously an elective or appointive office or position in county or municipal government.

3. Nothing contained in this act shall be deemed to prevent the incumbent of any office from abstaining from voting in any matter in which he believes he has a conflict of duty or of interest, nor to prevent a challenge of a right to vote on that account under the principles of the common law or any statute.

4. (a) Nothing herein contained shall be deemed to repeal or supersede any statute prohibiting the dual holding of offices or positions.

\* \* \* \* \* \* \* \*

(c) For the purposes of this act the term 'elective office' shall mean an office to which an incumbent is elected by the vote of the general electorate. \* \* \*"

■ What the legislation does—and it is unquestionably within the power of the Legislature, *McDonough v. Roach,* 35 *N. J.* 153, 157 (1961),—is to allow such dual office holding as was previously prohibited by reason of incompatibility in the two situations specified in sections 1 and 2, unless forbidden by prior statute, *e. g., R. S.* 19:3–5; 40:41–20. (These statutes prohibit specific dual office holding absolutely, whether or not there is incompatibility in fact.) The common law rule remains in force in all other cases.

■ The provisions of section 3 evidence a further legislative intent which should be noted. As has been said, the common law doctrine applied inexorably whenever there was incompatibility by reason of the established governmental

scheme. In order to assure absolute protection of the public interest, only one of the incompatible offices could be held, even though a specific instance of conflict of duty might in fact never, or only infrequently, arise. See *Kobylarz v. Mercer*, 130 *N. J. L.* 44, 47 (*E. & A.* 1943); *Jones v. MacDonald, supra* (33 *N. J.*, at *p.* 138); *McDonough v. Roach, supra* (35 *N. J.*, at *p.* 157). Now, in the situations permitted by sections 1 and 2 of the statute, section 3 indicates that such protection is to be afforded, at least to the extent of instances where voting is involved in either one of the posts, by invalidation of particular action as to which the office holder has a conflict of duty or interest and does not refrain from participation, where that result is called for "under the principles of the common law or any statute." *Cf. Grimes v. Miller*, 113 *N. J. L.* 553 (*Sup. Ct.* 1934); *Griggs v. Borough of Princeton*, 33 *N. J.* 207 (1960).

The undisputed facts of the matter at bar follow: Mr. Weaver, a lawyer, was elected in 1959 as a member of the governing body of the Township of North Bergen in Hudson County for a term of four years. The municipality is governed by the commission form. At the organization meeting following his election, he was assigned a department and selected as Mayor. The service is part-time in this community and the Mayor's annual salary $6,000.

Since July 1, 1960 he has also functioned as a Legal Assistant to the Hudson County Counsel by appointment of the Board of Freeholders without specification of term. This service is likewise part-time and the salary is also $6,000. Although the duties of the County Counsel are not detailed by statute, he is inherently the attorney and legal adviser of the Board of Freeholders and the county government generally. Under the general authority of *R. S.* 40:21-3, the Board of Freeholders may appoint those assistants and employees needed by the County Counsel to carry out his functions. According to the proofs before the trial judge, there are three Assistant County Counsel and 12 Legal Assistants in the Hudson County Counsel's office. The varied categories

of work are apportioned among this staff, with the several Assistant County Counsel being the superiors of the Legal Assistants and in turn responsible to the County Counsel himself. Mr. Weaver's assigned tasks since his appointment have involved the handling of claims for board and maintenance of inmates of county institutions and periodic tours of duty at the office of the County Counsel to answer such questions and requests for legal advice as might be posed by any county official or agency. He has an understanding with the County Counsel and the Assistant in charge of administration of the office that he is not to handle any matter affecting North Bergen.

Mr. Klein is Mayor and a member of the governing body of the Town of Guttenberg in Hudson County and a Boulevard Commissioner of that county. Again both services are part-time. The first carries a nominal salary of $600 per year and the second, annual compensation at the rate of $4,500. Both posts are elective, the mayoralty by the local electorate and the commissionership by the voters of the county at large. The Boulevard Commission is a county body which supersedes and exclusively exercises the former authority of the Board of Freeholders, at least in specified operational and control aspects, over those county roads constructed pursuant to *L.* 1888, *c.* 274 (saved from repeal by *R. S.* 27:17–1; *N. J. S. A.* Acts Saved from Repeal 27:17–1(1) *et seq.*). *R. S.* 27:17–2 to 20 inc. See *Nolan v. Fitzpatrick*, 9 *N. J.* 477 (1952); *State of New Jersey, Department of Civil Service v. Clark*, 15 *N. J.* 334 (1954). (Mr. Klein is also Superintendent of Schools of North Bergen. The charge made in the complaint that this was a further incompatible office was withdrawn before hearing in the trial court.)

Plaintiff agrees that the act does immunize Mr. Klein because his offices are both elective. It is contended, however, that the act is unconstitutional[1] and therefore his right to

[1] The Attorney-General was given notice of this contention prior to the reargument, but did not choose to intervene. *R. R.* 4:37–2.

continue in both is still to be decided by reference to the common law doctrine. Mr. Weaver, on the other hand, concedes that the statute does not abrogate the common law rule as to him since his county post is appointive, so his right to hold both must be determined as if the statute had not been enacted.

## I.

 Plaintiff first urges that *L.* 1962, *c.* 173 is unconstitutional because it violates *Const.* 1947, *Art.* IV, *sec.* VII, *par.* 4, providing that "every law shall embrace but one object, and that shall be expressed in the title." It is entitled "An Act concerning counties and municipalities in relation to the dual holding of offices and positions and supplementing chapter 11 of Title 40 of the Revised Statutes." The argument is (1) the title contains no mention of the fact that the act modifies or eliminates in part the common law prohibition against dual holding of incompatible offices; and (2) there is like absence of any reference to the fact that section 2 deals with dual holding of offices or positions by members of the State Legislature. Compliance with the constitutional requirement is to be tested by whether "the members of the Legislature are given notice of the subject to which the act relates and the public informed of the kind of legislation that is under consideration. * * * If the general subject matter is fairly expressed, the constitutional mandate is satisfied." *State v. Zelinski,* 33 *N. J.* 561, 565 (1960). Here we think there can be no question. The title clearly indicates that the general subject matter relates to dual holding of offices and positions. This is sufficient on that score and it is not necessary to include that the effect may be to change existing common law in whole or in part. The dual office or position which a legislator is permitted to occupy is at the county or municipal level. The title description of "An Act concerning counties and municipalities * * *" is sufficiently informative, for a title does not have to be a catalogue of everything contained in the body.

Plaintiff's second contention of unconstitutionality is more involved. He says that section 2 of the statute, permitting a state legislator simultaneously to hold any elective or appointive office or position in county or municipal government, violates *Const.* 1947, *Art.* III. That article directs the division of the powers of "the government" among the "three distinct branches"—legislative, executive and judicial—and forbids any persons "belonging to or constituting one branch" from exercising "any of the powers properly belonging to either of the others, except as expressly provided in this Constitution." The point made is that section 2 allows a member of the legislative branch to hold a non-legislative office or position at a lower level of government, thus rendering that section invalid, and that the whole act is thereby infected because it contains no severability clause. It should, of course, be noted that the scope of the section is automatically limited by *Art.* IV, *sec.* V, *pars.* 3 and 4, in effect prohibiting a member of the Legislature from holding any state office or position of profit and from being a judge of any court, and by *R. S.* 19:3–5 (preserved by sec. 4(a) of the act), forbidding a legislator from holding at the same time, *inter alia,* the office of county clerk, register, surrogate, sheriff or coroner.

We have little doubt but that section 2, if it were unconstitutional, would nevertheless be severable despite the absence of a specific clause so stating. That fact is not conclusive. The validity of the remainder of a statute is not affected unless the whole is so intimately interconnected and mutually dependent as reasonably to sustain the hypothesis that the Legislature would not have adopted the act at all unless the invalid section were included. *State by McLean v. Lanza,* 27 *N. J.* 516, 527–528 (1958), appeal dismissed 358 *U. S.* 333, 79 *S. Ct.* 351, 3 *L. Ed. 2d* 350 (1959), rehearing denied 359 *U. S.* 932, 79 *S. Ct.* 606, 3 *L. Ed. 2d* 634 (1959). It seems clear to us that, so tested, this statute is separable. If that be so, plaintiff is in no position to challenge the constitutionality of section 2 since Mr. Klein is not a state legis-

lator and plaintiff's rights as a taxpayer, as against him, are not affected by the challenged section. *Cf. Mountain Lakes Board of Education v. Maas,* 56 *N. J. Super.* 245, 259 (*App. Div.* 1959), affirmed o. b. 31 *N. J.* 537 (1960), *cert.* denied 363 *U. S.* 843, 80 *S. Ct.* 1613, 4 *L. Ed.* 2d 1727 (1960).

In any event, fundamental principles teach that where a statute is capable of two constructions, one of which would render it unconstitutional and the other valid, that which will uphold its validity must be adopted, *State v. Hudson County News Co.,* 35 *N. J.* 284, 294 (1961), and that constitutional questions will not be resolved unless absolutely imperative in the disposition of the litigation, see *State v. Salerno,* 27 *N. J.* 289, 296 (1958). Section 2 may be construed in a manner to render it constitutional, if there be any doubt about it, by holding that it means a legislator may hold any county or municipal office or position which is not interdicted by the organic doctrine of separation of powers. The question would then be simply one of constitutional application, rather than basic invalidity, in a particular situation with respect to the specific officer or position involved. Since the instant case does not concern a legislator, the problem is not reached here. We are not even called upon to decide whether the holding by a legislator of any county or municipal office or position could violate the constitutional requirement of separation of powers of "the government," *i. e.,* whether the doctrine operates only horizontally at the state level or whether it also extends vertically to encompass as well one branch at the state level in relation to another branch at a lower level. We may observe, however, that the latter contention would seem very thin in light of expressions to the effect that the separation doctrine has generally little or no applicability where the competing governmental functions are on entirely different levels. See *Morss v. Forbes,* 24 *N. J.* 341, 373 (1957); *Eggers v. Kenny,* 15 *N. J.* 107, 120–121 (1954).

We therefore conclude that *L.* 1962, *c.* 173 does permit Mr. Klein to hold his two offices whether or not they are incompatible.

## II.

The issue remains whether Mr. Weaver's two posts are incompatible under the common law rule.

He first asserts the technical position that application of the rule cannot even be considered because under it both posts must be "offices" and a Legal Assistant to a County Counsel does not hold an "office." He concedes his mayorality does fall into that category. Reliance is placed on the definition of "office" as originally composed to distinguish it from "position" and "employment" in other and more rigid connotations: "An office is a place in a governmental system created or recognized by the law of the state which, either directly or by delegated authority, assigns to the incumbent thereof the continuous performance of certain permanent public duties." *Fredericks v. Board of Health*, 82 *N. J. L.* 200, 201 (*Sup. Ct.* 1912). See Glasser, "A New Jersey Municipal Law Mystery: What is a 'Public Office?'," 6 *Rutgers L. Rev.* 503 (1952). While the County Counsel holds an "office," *Gallaher v. Camden County*, 129 *N. J. L.* 290 (*Sup. Ct.* 1942), his assistant does not, it is said, because the post has neither express statutory recognition nor specified duties.

Granting that the doctrine is limited to "offices," the appropriate definition of the term must have regard to the public evil the rule is designed to remedy. See *Reilly v. Ozzard, supra* (33 *N. J.*, at *p.* 541). While the quoted requisites have been used as a criterion in incompatibility cases, *e. g., Wilentz ex rel. Golat v. Stanger*, 129 *N. J. L.* 606 (*E. & A.* 1943), *Ozzard* indicated they were not exclusive or controlling. Parenthetically, it might be said that section 2 of *L.* 1962, *c.* 173, in legalizing the holding of an office or *position* in county or municipal government by a legislator, indicates legislative recognition that the doctrine can apply to a

"position" even if rigid categories and nomenclature were to be maintained.

We need not pursue the matter of precise definition further since, even under Mr. Weaver's view, we think a Legal Assistant to a County Counsel meets the technical test he urges. Such an assistantship is certainly allowed by statute, *R. S.* 40:21–3. The incumbent has the inherent obligation to perform, under the direction and control of the chief, that part of the permanent general functions and special tasks constituting the continuous duties of the County Counsel which are delegated to him in the particular organizational setup. The size of the county and the consequent volume of legal work requires more than one lawyer to do it all. This is enough to meet any technical requisites. The situation in this respect is akin to that of the undersheriff, empowered to perform the duties of the sheriff, who was held in *Westcott v. Briant*, 78 *N. J. L.* 226 (*Sup. Ct.* 1909), to be within the absolute prohibition of a statute (now *R. S.* 40:41–20) declaring that "[n]o person shall exercise any other civil office during the time he holds and exercises the office of a sheriff."

*Board of Chosen Freeholders of Hudson County v. Brenner*, 25 *N. J. Super.* 557 (*App. Div.* 1953), affirmed o. b. *sub nom. Board of Chosen Freeholders of Hudson County v. Smith*, 14 *N. J.* 348 (1954), relied on by Mr. Weaver, is not pertinent. There the operation and effect of statutes relating to civil service tenure protection turned on precise distinctions between classifications of governmental posts only for the purposes and within the meaning of the civil service law. The question was whether an Assistant County Counsel was entitled to such protection. One section of the civil service law, *R. S.* 11:22–2, *subd. e*, as it stood on the operative date placed "law officers of a county" in the unclassified service. Another specified that "the legal assistants of the law department of the counties" *R. S.* 11:22–2, *subd. k*, were included in the exempt class. The latter were entitled to tenure protection; the former, being analogous to the head of a govern-

mental department, were not. The court held that an Assistant County Counsel fell in the category of "legal assistant" rather than "law officer." The intended legislative distinction was obvious and clear. It was concluded that the protection given could not be defeated by the county's claim that the Assistant County Counsel was an "officer" because the person involved had been appointed for a fixed term under a general statute (*R. S.* 40:20–26). It was in this connotation that the court said he was not an "officer" and pointed out that the opposite construction would furnish the opportunity to thwart the civil service law by appointment to fixed terms of persons intended to be given tenure status. Classification pursuant to the precise provisions of the civil service law has no relevance where the incompatibility doctrine is involved.

But the real question is whether the prohibitory doctrine should be applied in the case of an assistant in a multi-person governmental legal department. It has to be kept in mind that, while a mayor is a policy making officer, a governmental attorney is a professional legal adviser, advocate and draftsman for his public client rather than a decider of policy. A lawyer is not exempt from the incompatibility rule merely because his public business is that of being a professional representative of others, *Reilly v. Ozzard, supra* (33 *N. J.* 529), but the situation is not quite the same as where the dual office holder's whole function is to make continuous policy determinations in both posts. As a lawyer his conduct is also always mandatorily controlled by the Canons of Professional Ethics when matters of conflicting interests arise. Canon 6. Where the public interest is involved, he may not represent conflicting interests even with consent of all concerned. *Drinker, Legal Ethics* 120 (1953); *American Bar Association, Opinions of the Committee on Professional Ethics and Grievances* 89, 183 (1957). This factor of professional obligation and discipline is not dispositive, but it has some bearing.

Mr. Weaver quite correctly concedes that situations can arise where the interests of the county and his municipality

will be at odds, with a consequent conflict of duties, *McDonough v. Roach, supra* (35 *N. J.* 153). This is true in the realm of opinion and advice as well as in actual litigation. Instances of the latter may be found in *Board of Chosen Freeholders of Hudson County v. Bayonne,* 54 *N. J. L.* 293 (*Sup. Ct.* 1892), and *Borough of Paramus in Bergen County v. Bergen County,* 25 *N. J.* 492 (1958). Plaintiff urges that the County Counsel himself would therefore hold incompatible positions if he were also a member of the governing body of one of the county's municipalities and that one of his assistants, similarly situated, should likewise be subject to the rule. We are not called upon, however, to decide the case of the County Counsel[2] and Mr. Weaver's situation may properly be determined by other considerations. By reason of the number of lawyers on his staff, the County Counsel may make certain, through the assignment of tasks, that Mr. Weaver will not be called upon to act in any matter in which his muncipality is directly or may be indirectly affected. According to the record this is the actual practice and it is, of course, required as well by the Canons of ethics. Whether it is desirable or wise to have an assistant law officer who is precluded from performing all functions or serving in all matters is not a question within the judicial sphere. But we do feel compelled to say that, since there are other members of the staff who are available to handle tasks which Mr. Weaver cannot, it is not requisite that he be barred from holding office as a member of the governing body of North Bergen. Under these particular facts, the public interest in the avoidance of conflct of duties is adequately assured of protection.

The judgment is affirmed, without costs.

---

[2] Nor are we concerned with the situation of the lawyer who, by regular appointment, serves as attorney for two or more governmental units or agencies either where there is a conflict of duty by reason of the established governmental scheme or where there is no such basic conflict but one may incidentally or occasionally arise for some other reason. But see discussion above with respect to Canon 6.

JACOBS and SCHETTINO, JJ. (dissenting as to Weaver):
The common law doctrine against the holding of incompatible
offices was high-minded and clearly furthered the public in-
terest. It was implemented in this court by a line of decisions
which, for the most part, construed it sympathetically and in
strengthening fashion. In *Jones v. MacDonald*, 33 *N. J.* 132
(1960), it was invoked where the defendant sought to con-
tinue in both the office of county tax board member and the
office of borough councilman, and more recently in *McDon-
ough v. Roach*, 35 *N. J.* 153 (1961), it was applied to strike
down the incompatible holding of the offices of county free-
holder and township mayor. In the *McDonough* case, refer-
ence is made to some of the instances in which the county
must deal with the municipalities within its borders and in
which conflicts would necessarily arise if members of the
board of freeholders were also members of particular munici-
pal governing bodies.

Good sense dictates that the common law prohibition, as
found in *McDonough*, be considered equally applicable to the
county counsel. He is the duly designated legal adviser of the
county and his important duties and functions, which are of
a continuing nature, include not only the giving of legal
advice but the preparation of necessary instruments and the
prosecution and defense of county litigation. It is true that
ultimate policy determinations are those of the board rather
than its legal adviser, but it would be wholly unrealistic to
suggest that the county counsel is entirely excluded from the
molding of such determinations. Indeed, when county litiga-
tion is involved, policy considerations will necessarily merge
with legal judgments in the county counsel's recommendations
to the board.

In any event, it would be difficult to justify the distinction
in the eyes of the public and particularly the residents of a
municipality where its interests have been adversely affected
by action of the board favoring another municipality, the
mayor of which is the county counsel. In applying the com-
mon law doctrine it must be borne in mind that public con-

fidence demands that there be the appearance as well as the actuality of impartiality and undivided loyalty. The dissenting opinion in *Reilly v. Ozzard*, 33 *N. J.* 529, 553 (1960), sets forth the compelling factors which led us to the view that, under the common law doctrine, a municipal attorney could not properly hold the office of state senator. See *Editorial, The Ozzard Case, In Broad Context*, 84 *N. J. L. J.* 4 (1961). Here, comparable factors satisfy us that the county counsel could not, under the common law doctrine, properly hold the office of mayor of a municipality within the county.

The majority opinion does not go so far as to hold that it would be compatible for the mayor of a municipality to be county counsel. Instead it advances the view that even if the county counsel is deemed disqualified from holding the office of mayor, his assistant is not so disqualified. This highly restrictive interpretation of the lofty common law doctrine disregards its motivating purposes and the precedents which have heretofore applied it to deputies and assistants along with their supervisors. See *Knuckles v. Board of Education of Bell County*, 272 *Ky.* 431, 114 *S. W.* 2d 511 (1938); *State v. Goff*, 15 *R. I.* 505, 9 *A.* 226 (1887). The important public considerations which oppose the dual holding of the offices of mayor and county counsel appear to us to apply largely to the dual holding of the offices of mayor and assistant to the county counsel. Analogically, it may be noted that in our own court rules, the prescribed disqualifications have widely and wisely been applied to assistants and their superiors alike. See *R. R.* 1:26–4; *cf. R. R.* 1:25B; *R. R.* 1:25C; *R. R.* 1:26.

It is suggested that in the instant matter the assistant will not be permitted by his superior to participate in any matter which affects the municipality of which he is mayor. But that is not enough, for his very holding of the offices entails the evils which the doctrine seeks to obviate. In *Jones v. MacDonald, supra*, the defendant likewise suggested that he would not participate in any matter in which his municipality

was involved. This was met by the court in the following language:

"It is no answer to say that the conflict in duties outlined above may never in fact arise. It is enough that it may in the regular operation of the statutory plan. 'If the duties are such that placed in one person they might disserve the public interests, or if the respective offices might or will conflict even on rare occasions, it is sufficient to declare them legally incompatible.' *DeFeo, supra* (17 *N. J.*, at *p.* 189). See *Wescott v. Scull, supra* (87 *N. J. L.* [410], at *p.* 418). Nor is it an answer to say that if a conflict should arise, the incumbent may omit to perform one of the incompatible roles. The doctrine was designed to avoid the necessity for that choice. 'It is immaterial on the question of incompatibility that the party need not and probably will not undertake to act in both offices at the same time. The admitted necessity of such a course is the strongest proof of the incompatibility of the two offices.' 42 *Am. Jur., Public Officers*, § 70, *p.* 936." 33 *N. J.*, at *p.* 138.

In December 1962 the Legislature adopted a statute which was designed to eliminate the common law doctrine in part. *L.* 1962, *c.* 173. We believe, as does the majority, that the legislative enactment is not unconstitutional and that it serves to immunize Mr. Klein's dual holding of his two elective offices. But the Legislature did not immunize Mr. Weaver's holding of his elective municipal office and his appointive county office, and as to his situation, the common law doctrine remains in full force and effect. The doctrine was soundly established in furtherance of the public interest and to the extent that the Legislature has permitted it to remain, it should be applied by us not narrowly, but broadly towards fair fulfillment of its highly desirable goals. We vote to affirm as to Klein and to reverse as to Weaver.

*For affirmance*—Chief Justice WEINTRAUB, and Justices FRANCIS, PROCTOR, HALL and HANEMAN—5.

*For affirmance in part and reversal in part* — Justices JACOBS and SCHETTINO—2.