610 A.2d 432

MATTHEW V. SCANNAPIECO, MAYOR OF THE TOWNSHIP OF MARLBORO, PLAINTIFF, v. FRANK G. ABATE, DEFENDANT.

Superior Court of New Jersey
Law Division Monmouth County

Decided May 11, 1992.

508

*John O. Bennett,* III, for plaintiff (*Ansell, Zaro, Bennett, Kenney & Grimm,* attorneys).

*Fred I. Eckhaus* for defendant (*Cohan & Eckhaus,* attorneys).

*Jack Goldstein* for intervenor Marlboro Township Planning Board (*Goldstein & Wallman,* attorneys).

MILBERG, A.J.S.C.

Matthew Scannapieco in his capacity as Mayor of the Township of Marlboro, Monmouth County (hereinafter referred to as Scannapieco) brings this action in lieu of prerogative writs for declaratory relief. He seeks a declaration that the appointment of the defendant, Frank G. Abate (hereinafter referred to as Abate) as a Class IV member of the Planning Board under *N.J.S.A.* 40:55D–23(a) is *void ab initio* and a declaration that a Class IV member of a township planning board cannot serve simultaneously as a member of a regional utility authority. The Marlboro Township Planning Board (hereinafter referred to as "The Planning Board") was granted leave to intervene. I hold that the appointment of Abate as a Class IV member of the Planning Board is valid. I further hold that a Class IV member of a planning board cannot serve simultaneously as a member of a regional utility authority serving the township.

The facts are not in dispute. On December 11, 1991, nineteen days prior to the end of his term, Saul G. Hornik then Mayor of the Township of Marlboro, appointed Abate, who at that time was a Councilman in the Township of Marlboro, as a Class IV member of the Planning Board pursuant to *N.J.S.A.* 40:55D–23(a), the appointment to become effective upon his resignation as a member of the Council. Abate was to complete the term of Sam Rein whose term was to end on December 31, 1992. On December 30, 1991 Abate resigned as Councilman and thereafter on December 30, 1991 took the oath of office and assumed the position of Class IV member of the Planning Board. On

January 23, 1992, Abate was appointed by a majority of the Township Council to the Western Monmouth Utility Authority, a regional utility authority for a five year term, beginning February 1, 1992 and expiring on January 31, 1997. This litigation then ensued.

Abate and the Planning Board initially argue that the complaint should be dismissed for the following reasons:

1. Scannapieco lacks standing since he brings this suit in his capacity as Mayor and not as a citizen and taxpayer of the township.
2. The action was not brought within the time period set forth in *R.* 4:69–6.
3. That Scannapieco failed to exhaust his administrative remedies required under *R.* 4:69–5.

Scannapieco concedes that he filed this action in his official capacity as Mayor to protect the integrity of the process, that is, the appointment of a Class IV member to the Planning Board. He further contends that this action was brought within time since the court may enlarge the time period set forth in *R.* 4:69–6. Lastly, he contends he does not seek to remove an official from office. He seeks a declaratory judgment involving a question of law and, therefore, he is not required to exhaust his administrative remedies.

In support of the defendant's argument, Abate and the Planning Board rely on *Demoura v. Newark,* 74 *N.J.Super.* 49, 180 *A.*2d 513 (App.Div.1962). In *Demoura* the plaintiff in a multi-count complaint challenged among other things, that the budget of the City of Newark was null and void, that numerous officials and employees of the City of Newark were holding offices improperly and illegally and that the City of Newark was making improper and illegal appropriations and payments of salaries. The court held that a proceeding in the nature of *quo warranto* involving a municipal office or position should be brought by a citizen and taxpayer of the municipality unless the plaintiff is a claimant of the office. The facts in *Demoura* are distinguishable from this action. The court specifically found that the plaintiff was not a taxpayer in the City of Newark and that the action was not brought out of any concern for the

general public but was purely a private strike action. Here it is obvious that Scannapieco the Mayor of the town is a taxpayer and citizen of the town. Furthermore, Scannapieco is not seeking the removal of a municipal official. He seeks as a mayor of a municipality a declaratory judgment as to whether a specific appointment to the Planning Board is valid.

*R.* 4:69–6(a) provides that an action in lieu of prerogative writs should be brought within forty five days. *R.* 4:69–6(c) provides that the court may increase the period of time provided in *R.* 4:69–6(a) where it is manifest that the interest of justice so requires.

I find that Scannapieco has standing to file this action. I also find that pursuant to *R.* 4:69–6(a) the period of time within which to file the action should be enlarged since the question presented to this court involves an important public, rather than private interest, which requires adjudication and clarification. I further find that this is a declaratory judgment action involving questions of law and not a review of an administrative action which requires Scannapieco to exhaust his administrative remedies.

*N.J.S.A.* 40:55D–23(a) provides for the creation of a municipal planning board. The statute provides that the membership of a planning board consist of four classes. Class I, Class II and Class III provide for the appointment of certain municipal officials to be members of a planning board. Class IV members, however, are appointed from other citizens of the municipality and not from the governing body.

As to Class IV, the statute provides as follows:

"Class IV—other citizens of the municipality, to be appointed by the mayor, or in the case of the council-manager form of government pursuant to the 'Optional Municipal Charter Law,' the members of Class IV ..."

Scannapieco contends that the appointment of Abate to the Planning Board at a time when he was a member of the Township Council violates the statutory provision that a Class IV member be appointed from other citizens of a municipality.

On December 11, 1991 Abate was appointed to the Planning Board at which time he was a member of the Town Council. Abate's appointment as with any other appointment, is subject to acceptance by the appointee. Abate's appointment was conditioned upon his resignation from the Council. On December 30, 1991 Abate resigned as a councilman. When Abate resigned from the Council, he then fell into the category of a Class IV citizen. On December 30, 1991 he accepted the appointment to the Planning Board by taking the oath of office. Accordingly, the appointment of Abate as a Class IV member of the Marlboro Township Planning Board is valid.

The next question presented to the court is whether or not Abate could simultaneously serve as a Class IV member of the Marlboro Planning Board and a member of the Western Monmouth Utilities Authority. Scannapieco contends that *N.J.S.A.* 40:55D–23(a) prohibits Abate from serving simultaneously as a Class IV "citizen" member of the Township's Planning Board and a member of the Western Monmouth Utilities Authority.

*N.J.S.A.* 40:55D–23(a) provides:

"Members of Class IV shall hold no other municipal office, position or employment".

The Western Monmouth Utilities Authority was created by ordinances duly adopted in several municipalities pursuant to *N.J.S.A.* 40:14B–5. That statute provides:

"The governing bodies of any two or more municipalities, ... may, by parallel ordinances duly adopted by each of such governing bodies within any single calendar year, create a public body corporate and politic ... with all or any significant part of the names of each such municipality or some identifying geographical phrase inserted. Said bodies shall consist of the members thereof, in an aggregate number determined hereinafter in this section provided, who shall be appointed by resolutions of the several governing bodies as hereinafter in this section provided, and it shall constitute the municipal authority contemplated and provided for in this act and an *agency and instrumentality of the said municipalities.*" (emphasis added)

In every case involving the application of the statute it is the function of the court to ascertain the intention of the Legislature from the plain meaning of the statute and to apply it to the

facts as it finds them. A clear and unambiguous statute is not open to construction or interpretation. Few statutes can boast such clarity or withstand that test through every inquiry, and the court must take the responsibility of determining in each case presented whether the particular statute, in its application to it, is clear and unambiguous. *Watt v. Mayor and Council of Borough of Franklin,* 21 *N.J.* 274, 277, 121 *A.*2d 499 (1956). In *Watt* the Court stated that the need for construction of a statute arises in two instances. First, when statutes on their face are clear and unequivocal but in light of related legislation and of the surrounding facts and circumstances of the case in which they are applicable, the true meaning becomes indefinite or obscure; second, when the meaning of the statute is obviously obscure or doubtful and the language used is *per se* capable of dual interpretation. When these two circumstances appear, the court is at liberty to interpret the statute but it is the court's solemn duty to seek out and give effect to the legislative intent through the aids available. *Id.* at 277, 278, 121 *A.*2d 499.

This court must decide whether the Legislature in *N.J.S.A.* 40:55D–23(a) intended that the words "municipal office, position or employment" apply to positions in a regional utility authority.

*N.J.S.A.* 40:14B–1 et seq. provides that two or more municipalities by parallel ordinances are authorized to create a municipal utilities authority. The statute provides that the authority is an agency and instrumentality of the municipality and that the governing body appoint its own members to the authority. The identical statutory provision for a utility authority exists under the Sewerage Authority Law. *N.J.S.A.* 40:14A–1 et seq. A utility authority, as with a sewerage authority, is an agency and instrumentality of the municipality or municipalities creating it. These authorities engage in the fulfillment of a municipal function, *Jordan v. Zidel,* 40 *N.J.* 244, 248, 191 *A.*2d 178 (1963).

In *Camden County v. Pennsauken Sewerage Authority,* 15 *N.J.* 456, 105 *A.*2d 505 (1954) the Court was presented with the question of whether or not a sewerage authority abused its discretion in exempting public buildings of the township from sewerage service charges while imposing charges on county institutions located in the township. The Court in defining the sewerage authority created under *N.J.S.A.* 40:14A–1 *et seq.* stated on page 465, 105 *A.*2d 505:

> "Though given a measure of autonomy, it is nevertheless the *alter ego* of the municipality in the service of this essential public need. While a separate and distinct economic and governmental unit, it is but the means of discharging the local governmental responsibility for the public health, comfort, convenience and welfare in relation to the disposal of sewage, * * *."

In *Kohler v. Cobb,* 31 *N.J.* 369, 157 *A.*2d 681 (1960) the plaintiffs sought a declaration that they were members of the Avalon Sewerage Authority after the municipality adopted resolutions declaring the position of the plaintiffs vacant because of their failure to take an oath pursuant to *N.J.S.A.* 40:46–19. Under *N.J.S.A.* 40:46–19 every person elected to an office in a municipality was required, before assuming such office, to take and subscribe to an oath of office. In order to resolve this issue it was necessary for the Court to determine whether or not an appointment to the sewerage authority was an appointment "to an office in any municipality". The Court determined that under the statute, the authority is identified with its creator the municipality and concluded by stating on page 514:

> "The statute thus shows a close relationship between the municipality and the sewerage authority."

It is apparent that a regional utility authority is an agent and instrumentality of the municipalities which it serves. Accordingly, I find that it was the intent of the Legislature in using the words "municipal office, position or employment" in *N.J.S.A.* 40:55D–23(a) to include appointments to a local regional utility authority. Consequently, a Class IV member of a planning board is prohibited from holding any office in a local regional utility authority.

Even if Abate is not prohibited from holding both offices under *N.J.S.A.* 40:55D–23(a) he would be under the common-law bar against dual holding of incompatible offices.

The basic rule of incompatibility was stated in *State v. ex rel. Clawson v. Thompson,* 20 *N.J.L.* 689 (Sup.Ct.1846):

"... 'Where there is no express (constitutional or statutory) provision, the true test is, whether the two offices are incompatible in their natures, in the rights, duties, or obligations connected with or flowing out of them. Offices, says Bacon, are incompatible or inconsistent, when they cannot be executed by the same person; or when they cannot be executed with care, and ability; or where one is subordinate to or interferes with another." *Bac. Abr. Tit. "Office" K.'* "

In *Jones v. MacDonald,* 33 *N.J.* 132, 162 *A.*2d 817 (1960), the Court considered whether one may lawfully be both a member of the county board of taxation and simultaneously a councilman of a municipality in the county. Since there was no applicable statutory or constitutional provision, the common-law doctrine prohibiting dual holding of incompatible offices was reviewed. In concluding that the positions were incompatible and in conflict, the Court stated that the common-law doctrine is not limited to cases in which one office is subordinate to another, but rather embraces as well all situations in which under the established scheme of government,

"the duties of office clash in their demands with the result that the incumbent must choose between them, the public interest is violated. An officer cannot serve two masters with conflicting statutory roles. Such is the present case. The municipality is a litigant before the county board. It would offend propriety for a man to sit in judgment of his own cause." *Id.* at 137, 162 *A.*2d 817.

On page 138, 162 *A.*2d 817 the Court stated:

"It is no answer to say that the conflict in duties outlined above may never in fact arise. It is enough that it may in the regular operation of the statutory plan."

The common-law bar against dual holding of incompatible offices was again addressed in *McDonough v. Roach,* 35 *N.J.* 153, 171 *A.*2d 307 (1961). In *McDonough* the Court was called upon to decide whether the positions of mayor and a member of the

board of freeholders were incompatible.[1] The Court held that the positions of the two offices were incompatible. As in *Jones v. MacDonald,* supra, the Court stated that:

"It is no answer to say that the conflict in duties outlined above may never in fact arise. It is enough that it may in the regular operation of the statutory plan. If the duties are such that placed in one person they might disserve the public interests, or if the respective offices might or will conflict even on rare occasions, it is sufficient to declare them legally incompatible." *McDonough,* 35 *N.J.* at 157, 171 *A.2d* 307.

There are other cases in which the courts have found that there is a common-law bar against dual holding of incompatible offices. In *Kaufman v. Pannuccio,* 121 *N.J.Super.* 27, 295 *A.2d* 639 (App.Div.1972), it was held that the position of lieutenant in the police department was incompatible with the position of a city councilman. The reasons were that as a city councilman he would be empowered and called upon to pass upon matters involving salary, tenure, and promotions of individuals in the police department. In *Dunn v. Froehlich,* 155 *N.J.Super.* 249, 382 *A.2d* 686 (App.Div.1978), it was held that the position of municipal policeman and the position of councilman were incompatible since as councilman, he would be charged with detecting and punishing misconduct in the police department, and in effect sit in judgment of his supervisor in the police department. In *Hollander v. Watson,* 167 *N.J.Super.* 588, 401 *A.2d* 560 (Ch.Div.1979), it was held that the position of a trustee in a community college and the position as a county freeholder were incompatible.

In *Reilly v. Ozzard,* 33 *N.J.* 529, 166 *A.2d* 360 (1960), the question was whether the common-law doctrine prohibiting dual holding bars a member of the State Senate from holding the position of township attorney. The Court held that there was no common law incompatibility between the two positions based upon the reasoning that a municipal attorney was not engaged

---

[1]Subsequent to this decision the New Jersey Legislature enacted *N.J.S.A.* 40A:9–4(1) which provided that it would be lawful for a person to hold simultaneously an elected county office and an elected municipal office.

in advancing legislation before the Legislature on behalf of the municipality.

In other cases the courts have found that the common-law bar against incompatibility of office did not apply. In *Ahto v. Weaver*, 39 *N.J.* 418, 189 *A.*2d 27 (1963), the Court found that the common law bar against incompatibility of offices did not apply to a county counsel's legal assistant holding the position as township counsel member and mayor. In *Brown v. Healey*, 80 *N.J.Super.* 1, 192 *A.*2d 589 (App.Div.1963), the court determined that the office of mayor and county purchasing agent were not incompatible.

Public policy demands that an office holder discharge his duties with undivided loyalty. The doctrine of incompatibility is intended to assure performance of that quality. Its applicability does not turn upon the integrity of the person concerned or his individual capacity to achieve impartiality for inquiries of that kind would be too subtle to be rewarding. The doctrine applies inexorably if the offices come within it, no matter how worthy the officer's purpose or extraordinary his talent, *Jones v. MacDonald, supra,* 33 *N.J.* at 135, 162 *A.*2d 817.

In *McDonough v. Roach,* supra, the Court stated:

"In negotiations the county board is bound to consider the interests of all of its citizens while the local governing body has a like obligation to the citizenry of the municipality alone. No man, much less a public fiduciary, can sit on both sides of a bargaining table. He cannot in one capacity pass with undivided loyalty upon proposals he advances in his other role." Id. 35 *N.J.* at 156, 171 *A.*2d 307.

The Western Monmouth Utilities Authority is an agency and instrumentality of several municipalities including Marlboro. Abate's membership on both the Planning Board and Western Monmouth Utilities Authority creates a conflict. For example, it is possible that the Western Monmouth Utilities Authority may be required to appear before the Marlboro Planning Board on a proposed utility project. It would then be difficult for Abate to pass upon proposals presented to him as a planning

board member that he may have advanced in his role as a utility authority member. This situation demonstrates that the positions are incompatible and, therefore, give rise to the common-law bar against dual holding of incompatible offices.

Such an application by a municipal authority occurred in *Shupack v. Manasquan River Sewerage Authority,* 194 *N.J.Super.* 199, 476 *A.*2d 816 (App.Div.1984). In *Shupack* the Court held that a sewerage authority is not exempt from obtaining from the local planning board site plan approval and the court required that the sewerage authority apply to the township for a building permit under the State Uniform Construction Code Act.

Accordingly, both under *N.J.S.A.* 40:55D–23(a) and the common-law bar against dual holding of incompatible offices the court finds that Abate, a Class IV member of the Marlboro Township Planning Board cannot serve simultaneously as a member of the Western Monmouth Utilities Authority.