WILLIAM A. WAGNER, PROSECUTOR-APPELLANT, v. COUNTY EMPLOYEES PENSION COMMISSION OF THE COUNTY OF ESSEX, DEFENDANT-RESPONDENT.

Argued February 3, 1943—Decided May 20, 1943.

· For the appellant, *Peter Hofstra* (*Joseph V. Fumagalli* and *Joseph J. DeLuccia,* of counsel).

For the respondent, *Arthur T. Vanderbilt* (*G. Dixon Speakman,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. This is a pension case. The question requiring decision is whether the affirmance of the denial of prosecutor's application, as a county employee, for retirement on pension was proper.

From the record submitted, we learn that prosecutor, William A. Wagner, was at the time of the taking of the depositions sixty-nine years old. He had been in the meat business and had been a butcher by occupation since 1900. He was employed, as a butcher, by the Essex County Isolation

Hospital, at Bellevue, New Jersey, on December 2d, 1929, and continued to work until December 31st, 1940, when, because of a heart condition which allegedly developed in 1939, and thereafter became aggravated, he was obliged to and did stop working. Accordingly, on January 7th, 1941, he made application, in writing, to respondent, the County Employees Pension Commission of Essex County, "for retirement on pension," to take effect on January 16th, 1941, on the ground that he had suffered a "permanent physical disability." *Cf. Ursi v. County Employees, &c., Essex,* 120 *N. J. L.* 52; 197 *Atl. Rep.* 744.

Prosecutor's application for retirement on pension was based upon *N. J. S. A.* 43:10-4 which provides as follows:

"A county employee who shall have received a permanent disability by reason of injury, accident or sickness, incurred at any time in the service, which permanently incapacitates him, shall, upon the certificate of a physician designated for that purpose by the pension commission, be retired on half pay."

"When a county employee desires to retire by reason of injury or disease, he shall apply in writing to the pension commission for retirement. Thereupon, the pension commission shall call to its aid a regularly licensed and practicing surgeon or physician. The president of the pension commission may administer oaths to any persons called before the commission regarding the matter. If the two surgeons or physicians so called fail to agree upon the physical condition of the applicant, the pension commission may call a third and disinterested, licensed and practicing physician or surgeon and the determination of a majority of them, they having been first duly sworn, shall be reduced to writing and signed by them. The commission shall decide, by resolution, whether the applicant is entitled to the benefits of this article and shall consider the physicians' or surgeons' determination in reaching its decision."

Prosecutor's application was denied on September 19th, 1941. Concededly, that denial was based upon the written reports of examinations made of prosecutor by two physicians selected by respondent. Both physicians agreed that prose-

cutor suffered from a heart condition, although one believed that prosecutor "is unable to do any type of work which would require him to lift heavy pieces of meat," and the other believed that "there is no doubt that the lifting of heavy weights was not good for him," nonetheless, both agreed that prosecutor's heart condition was not caused or aggravated by his services as a butcher for the named hospital but rather, as one of the physicians reported, that prosecutor is suffering from a "degenerative disease process."

It is stipulated that prosecutor was given no notice of any hearing, nor was he given the opportunity to testify or produce witnesses in his behalf.

Prosecutor was allowed a writ of *certiorari* to review the denial of his application. He was allowed, on consent of the respective counsel, a rule to take depositions. He testified that his duties consisted of carrying chunks of meat and boxes of poultry and provisions weighing from 48 to 100 pounds; that when he took up his employment, in 1929, his heart was "good" and that he had never been ill or lost any time from his work; that he experienced no heart attacks prior to 1929; and that he suffered his first heart attack in 1939. Over objection, prosecutor's physician testified that he had first examined prosecutor in 1939 and found that he suffered from an "acute heart condition;" that thereafter he examined prosecutor about twenty-five times within a period of a year and one-half; and that the "heavy lifting" done by prosecutor did "aggravate his condition." The two physicians for respondent testified substantially in accordance with their respective reports.

The Supreme Court held that the procedure followed by respondent was "in full compliance" with the statute, *supra,* and which statute in its opinion made no provision for the "introduction of evidence by the applicant" or "that he be given a hearing * * *." Prosecutor appeals.

1. We think that the construction given to the statute (*N. J. S. A.* 43:10-4) fails to give effect to the manifest intent of the legislature as clearly shown by the context of the statute though words obviously appear to have been inadvertently omitted therefrom.

It will be observed that *N. J. S. A.* 43:10-4 consists of two paragraphs. Each paragraph distinctly relates to specific and different circumstances and each prescribes the applicable procedure. The first paragraph comes into play only when it is invoked by the pension commission. Concededly, that paragraph is not involved in the case at bar. The second paragraph comes into play when invoked by a county employee. A reading of the first three sentences of this paragraph utterly fails to give any basis for or meaning to the fourth sentence. The first reference to a surgeon or physician appears in the second sentence which provides that the pension commission shall "call" to its aid "a regularly licensed surgeon or physician" and without any further provision for the calling of a second surgeon or physician, the fourth sentence provides that if the *"two* surgeons or physicians *so* called shall fail to agree upon the physical condition of the applicant, the pension commission may call a third and disinterested, licensed and practicing physician or surgeon * * *."

We are firmly of the opinion that the manifest intent of the legislature as plainly shown by the context of the statute impels the conclusion that words were inadvertently omitted between the second and fourth sentences. We so hold.

This statute is one of a number of statutes embraced under title 43 (pensions and retirement and unemployment compensation), *N. J. S. A.* 43:1-1, *et seq.* A reading of those statutes discloses that the legislature has in each instance followed a rather well defined pattern. The pension commission in the first instance calls to its aid a regularly licensed and practicing surgeon or physician, the applicant is given the same privilege, and then if the two surgeons or physicians *"so called"* fail to agree upon the physical condition of the applicant, the pension commission may call a third disinterested licensed and practicing surgeon or physician and the determination of the majority of them is reduced to writing and signed by them. More specifically, that pattern, so far as is here pertinent, provides as follows: "* * * the pension commission shall call to its aid (or assistance) a regularly licensed and practicing surgeon or

physician and *the person making the application may like-wise call to his aid a regularly licensed and practicing physician or surgeon* * * *." (Italics supplied.) *Cf. N. J. S. A.* 43:16-2 (police and firemen), *N. J. S. A.* 43:7-12 (prison officers), and *N. J. S. A.* 43:10-40 (members of county police department). The obvious difference is that the second sentence of the statute before us does not contain the italicized words.

We need hardly labor the point that there is nothing in the context of the statute to indicate that the legislature intended that a county employee should have his application for retirement on pension determined contrary to its legislative pattern. The contrary is true.

We discern a clear inadvertent omission in the statute of the italicized words. If the words are added—and we add them—we neither legislate (*Cf. Orvil* v. *Woodcliff,* 61 *N. J. L.* 107; 38 *Atl. Rep.* 685), nor supply "a *casus omissus,*" (*Cf. Public Service Co-ordinated Transport* v. *State Board of Tax Appeals,* 115 *N. J. L.* 97, 103, 104; 178 *Atl. Rep.* 550; *Studerus Oil Co., Inc.,* v. *Jersey City,* 128 *N. J. L.* 286, 291; 25 *Atl. Rep.* (2d) 502; *Isolantite, Inc.,* v. *United Electrical, &c., America,* 132 *N. J. Eq.* 613; 29 *Atl. Rep.* (2d) 183), nor create "a new liability," (*Cf. Freeholders of Mercer* v. *The Freeholders of Warren County,* 23 *N. J. L.* 415, 419). What we do is to give effect to the manifest intent of the legislature as clearly shown by the context of the statute. This is a proper judicial function. *Cf. Iadone* v. *State,* 1 *N. J. Mis. R.* 281, 283; *Lane* v. *Schomp,* 20 *N. J. Eq.* 82; *Orvil* v. *Woodcliff, supra* (at *p.* 111); 3 *A. L. R.* 404, and 126 *Id.* 1325, 1330 (supplying omitted words in statute); 59 *C. J.* 992, § 593.

2. Nor do we share the view that an applicant under the statute—as prosecutor here—is not entitled to a hearing and to the opportunity to give evidence in aid of his claim. We think that the *language* of the statute authorizing the president of the pension commission to administer oaths "to any persons" called before the commission regarding the matter is broad enough to include the applicant and his witnesses. But be that as it may, prosecutor, under our con-

struction of the statute, is clearly entitled to a hearing and to the opportunity to be heard and to produce evidence in aid of his claim. We so hold.

The judgment is reversed. The cause should be tried and determined consistently with the views herein expressed. Costs are to abide the event.

*For affirmance*—THE CHANCELLOR, CASE, DONGES, WELLS, JJ. 4.

*For reversal*—BODINE, HEHER, PERSKIE, COLIE, DEAR, RAFFERTY, THOMPSON, JJ. 7.