126 N.J. Super. 475 (1974)
315 A.2d 686
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN M. DEEGAN, JOSEPH B. STAPLETON, JOHN W. MC LAUGHLIN, ANGELO BEVACQUA, DEFENDANTS-APPELLANTS, AND FRANK L. DE MARCO AND FRANCIS E. RIEMAN, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 18, 1973.
Decided February 6, 1974.
*479 Before Judges HALPERN, MATTHEWS and BISCHOFF.
Mr. William P. Verdon argued the cause for appellant John M. Deegan (Messrs. Meyner, Landis and Verdon, attorneys).
Mr. Lawrence P. Brady, Jr. argued the cause for appellant Joseph B. Stapleton.
Mr. Kenneth I. Hyman argued the cause for appellant Angelo Bavacqua (Messrs. Krivit, Levitov, Miller, Galdieri and De Luca, attorneys).
Mr. Patrick D. Conaghan, attorney for appellant John W. McLaughlin, filed a statement in lieu of brief.
Mr. Armand Pohan, Special Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney; Mr. Edwin H. *480 Stern, Special Deputy Attorney General, and John De Cicco, Deputy Attorney General, on the brief).
The opinion of the court was delivered by HALPERN, P.J.A.D.
This is an appeal by John M. Deegan, Joseph B. Stapleton, John W. McLaughlin and Angelo Bevacqua, four of the five Hudson County Pension Commissioners (Commission), from judgments of conviction entered on a jury verdict finding them guilty of (a) conspiracy to pervert the due administration of the pension laws (N.J.S.A. 43:10-1 et seq. and N.J.S.A. 2A:98-1 and 2), (b) unlawfully assisting a public official, John J. Kenny, in obtaining county funds by granting him an illegal pension (N.J.S.A. 2A:135-3), and (c) misconduct in office (N.J.S.A. 2A:85-1). The fifth Commissioner, Frank L. De Marco, who was jointly tried with appellants and was convicted only of misconduct in office, has not appealed. The Commission's examining physician, Dr. Francis E. Rieman, who was charged only with conspiracy, was acquitted by the jury. Rieman was the only defendant who testified at the trial.
The original indictment contained 84 counts. As the result of a pretrial conference, appellants were tried only on 27 counts, namely: count 1 which charged conspiracy; count 84 which charged misconduct in office in that appellants failed to observe statutory standards for the award of disability pensions, failed to ascertain whether an applicant's disability claim was work-connected when he had worked for less than 20 years, illegally reinstated members who had withdrawn from the pension fund, and illegally gave pensions to 25 persons named in counts 2 through 83 of the original indictment; and 25 counts which charged unlawful assistance to named public officials in obtaining illegal pensions. Appellants' pretrial motions for dismissal of the indictment were denied. Their applications for leave to appeal from such denial were denied by this court.

*481 I.
We turn first to review the trial court's refusal to dismiss the indictment because the primary thrust of this appeal, as asserted by appellants, depends upon the disposition of this issue which is entwined with the charge of misconduct in office. Appellants argued in the trial court, as they do here, that they "did not violate any duties and there was no evidence presented to the grand jury to support the return of the indictment * * *."
Count 84 of the indictment, which charged appellants with misconduct in office, alleged:
1. At all times between the 20th day of February, 1968 and the 20th day of May, 1971, in thep lace and jurisdiction aforesaid, JOHN M. DEEGAN, JOSEPH B. STAPLETON, JOHN W. MC LAUGHLIN, ANGELO BEVACQUA and FRANK L. DE MARCO did hold public office and did act as members of the County Employees' Pension Commission of the County of Hudson, and as such were charged by law with the proper and faithful control and management of the County Employees' Pension Fund of the County of Hudson and of the retirement of employee members of the said Pension Fund in accordance with the laws of the State of New Jersey and the provisions of R.S. 43:10-1, et seq.
2. On Divers dates between the 20th day of February, 1968 and the 20th day of May, 1971, in the place and jurisdiction aforesaid, the said JOHN M. DEEGAN, JOSEPH B. STAPLETON, JOHN W. MC LAUGHLIN, ANGELO BEVACQUA and FRANK L. DE MARCO, holding public office as members of the said Pension Commission, in violation of their duties, willfully and unlawfully did approve and award a total of at least $392,946.00 in annual disability pensions to at least 100 employees of the County of Hudson without having observed the standards for, and without having made proper and faithful inquiry into the facts necessary to make, the determination of disability which the said defendants were required to make according to law, to wit, R.S. 43:10-3 and R.S. 43:10-4.
3. On divers dates between the 20th day of February, 1968 and the 20th day of May, 1971, in the place and jurisdiction aforesaid, the said JOHN M. DEEGAN, JOSEPH B. STAPLETON, JOHN W. MC LAUGHLIN, ANGELO BEVACQUA and FRANK L. DE MARCO, holding public office as members of the said Pension Commission, in violation of their duties, willfully and unlawfully did approve and award a total of at least $237,215.00 in annual disability pensions to at least 68 employees of the County of Hudson, each of the said employees having at the time of his respective award *482 less than 20 years' service with the County, the said defendants willfully and unlawfully having failed to observe the standards imposed by law for the awarding of disability pensions to such employees, to wit, R.S. 43:10-4, and having failed to determine whether the alleged disabilities of the said employees arose out of and in the course of service with the County of Hudson.
4. On divers dates between the 20th day of February, 1968 and the 20th day of May, 1971, in the place and jurisdiction aforesaid, said JOHN M. DEEGAN, JOSEPH B. STAPLETON, JOHN W. MC LAUGHLIN, ANGELO BEVACQUA and FRANK L. DE MARCO, holding public office as members of the said Pension Commission, in violation of their duties, willfully and unlawfully did reinstate as members of the said Pension Fund divers persons who had previously withdrawn from the said Pension Fund, said reinstatements being contrary to the provisions of R.S. 43:10-1, et seq.
5. The Grand Jurors aforesaid repeat the allegations of Counts Two through Eighty-three and make the same a part hereof as though fully set forth herein.
ALL of the foregoing being contrary to the provisions of N.J.S. 2A:85-1, against the peace of this State, the government and the dignity of the same.
As hereinafter discussed, we hold that the 84th count properly charged appellants with misconduct in office under N.J.S.A. 2A:85-1 because they were charged with unlawful behavior in relation to their official duties intrusted to them by virtue of their public office as pension commissioners. State v. Cohen, 32 N.J. 1, 8 (1960); 1 Burdick, Law of Crime § 272 at 388 (1946).
Whether a statutory duty is imposed upon a public officer is a legal issue. The factual issues relating to employees who received pensions, their ages, length of service, amount of pensions awarded, and other related factual matters are not in dispute. What is in issue, in connection with the misconduct in office charge, is appellants' contention that they were not charged by statute, directly or indirectly, with the legal duty (a) to determine whether an employee was qualified to receive a pension because of a physical disability, (b) to determine whether an alleged disability was work-connected, and (c) to prohibit the reinstatement of previously withdrawn pension employees. Therefore, they argue *483 they violated no statutory duty upon which an indictment, or their convictions, could be founded. We disagree.
The Commission came into being under the provisions of N.J.S.A. 43:10-1 et seq. Hudson being a first-class county, the Commission was comprised of five members selected in accordance with N.J.S.A. 43:10-10. With respect to eligibility by county employees for pensions, three classifications are made:

43:10-2. Retirement for service and age

An employee of a county of the first class who shall have served in the county's employ for a period of twenty years and reached sixty years of age, shall, upon his own application, be retired on half pay.

43:10-3. Retirement for service and disability

An employee of a county of the first class who shall have served in the county's employ for a period of twenty years and shall have been found, as hereinafter provided, to be physically unfit for further service, shall, whether or not he has reached sixty years of age, upon written application to the pension commission, be retired on half pay.

43:10-4. Retirement for disability, injury or disease; examination; determination by commission

A county employee who shall have received a permanent disability by reason of injury, accident or sickness, incurred at any time in the service, which permanently incapacitates him, shall, upon the certificate of a physician designated for that purpose by the pension commission, be retired on half pay.
When a county employee desires to retire by reason of injury or disease, he shall apply in writing to the pension commission for retirement. Thereupon, the pension commission shall call to its aid a regularly licensed and practicing surgeon or physician and the person making the application may likewise call to his aid a regularly licensed and practicing surgeon or physician. The president of the pension commission may administer oaths to any persons called before the commission regarding the matter. If the two surgeons or physicians so called fail to agree upon the physical condition of the applicant, the pension commission may call a third and disinterested, licensed and practicing physician or surgeon and the determination of a majority of them, they having been first duly sworn, shall be reduced to writing and signed by them. The commission shall decide, by resolution, whether the applicant is entitled to the benefits of this article and shall consider the physicians' or surgeons' determination in reaching its decision. [As amended, L. 1947, c. 129, p. 601, § 1]
To determine the legal issues presented, it is essential to outline the uncontroverted facts as to how employees applied *484 for pensions and how they were processed by appellants. In addition, the relevant facts pertaining to the John J. Kenny pension will be discussed separately since appellants were convicted only in connection with the pension granted to him.
Approximately 100 pensions, totalling annual payments of about $400,000, were granted by appellants between February 1968 and May 1971. Each pension application here involved was made under the provisions of N.J.S.A. 43:10-3 or N.J.S.A. 43:10-4. The Commission did not initiate any of them.
Applications for pensions were delivered to Michael Casserly, secretary to the Commission, who testified to the procedure used in processing them. He arranged for Dr. Francis Rieman, the County Medical Examiner and Commission physician, to examine the applicants. Rieman's medical reports were placed in the applicant's file folder and delivered to the Commission at its monthly meeting. Casserly would inform the Commissioners at the meeting of the applicant's name, age, address, department and term of employment, and without reading the entire medical report, he would recite the recommendation made by Rieman. The applicant's prior medical or employment history was not considered before voting. Nor did the Commissioners ever discuss the legal standards of disability, or whether the disability was work-connected. Casserly's testimony as to the processing procedure was not controverted  in fact it was corroborated by Dorothy Reith, the recording secretary of the Commission.
We turn to the disability pension granted to John J. Kenny. Dr. Joseph Timmes, Director of Cardio-thoracic Surgery at Pollak County Hospital, in Jersey City, testified that on July 31, 1970 he took the blood pressure of John J. Kenny at the request and in the presence of John V. Kenny (a Democratic leader of Hudson County). At John V. Kenny's request he certified, in writing, that John J. Kenny's blood pressure was 180/105.
*485 Dr. Rieman testified that at John V. Kenny's request, made by telephone on August 10, 1970, he scheduled an appointment to examine John J. Kenny on August 11, 1970. The appointment was not kept. On August 13, 1970 appellant Joseph B. Stapleton asked Dr. Rieman for John J. Kenny's disability certificate. He admitted that although he had not examined John J. Kenny he delivered the signed report on August 13, 1970 certifying to such examination but dated it August 12, 1970.
Thus, when John J. Kenny's pension was granted at the specially convened Commission meeting on August 12, 1970, Kenny had not been examined by Rieman, nor did appellants have before them a medical certificate with reference to him. We should note here that the August 12, 1970 special meeting was the only one at which Casserly was not present, and that De Marco, who was also absent, was acquitted by the jury of the conspiracy charge and the charge of granting an illegal pension to John J. Kenny.
As against this factual testimonial background, with respect to all the pensions granted, appellants rely upon their argument that they were under no legal duty to independently confirm Rieman's medical reports, to ascertain if the disabilities were work-connected, or to follow up on the applications, because they relied in good faith on Rieman's medical reports.
With particular respect to John J. Kenny's pension they argue that in view of the voluminous trial testimony "the convictions for conspiracy and granting an illegal pension to J.J. Kenny cannot be considered independent and severable but rather must be considered as tainted by the entire proceedings." This ingenious argument is made because they realize that the illegality of granting a pension to John J. Kenny, standing alone, is sufficient to sustain their convictions for conspiracy and the granting of an illegal pension even if it could be said they were not guilty of misconduct in office.
We commence the consideration of appellants' statutory duties by pointing out that if their arguments are *486 meritorious then, for all practical purposes, Dr. Rieman would be the sole judge as to eligibility for disability pensions. Such abrogation of their duties was not intended by the Legislature in enacting N.J.S.A. 43:10-1 et seq. On the other hand, considering the statutory pension scheme as a whole, the conclusion is inescapable that appellants, when considering pension applications, were under a statutory duty to determine pension eligibility and, where applicable, whether the claimed disability was work-connected.
N.J.S.A. 43:10-2, 3 and 4 are parts of a comprehensive statutory scheme designating when, and under what circumstances, county employees are entitled to pensions. N.J.S.A. 43:10-2 is not here involved since it specifically mandates that those who have served for 20 years and have reached the age of 60 shall, upon application, be retired on half-pay.
N.J.S.A. 43:10-3 applies only to an employee who has served for 20 years and who is found to be "physically unfit for further service, shall, whether or not he has reached sixty years of age, upon written application to the pension commission, be retired on half pay." This section covers employees who have been employed for 20 years, but who are now physically unfit for further service regardless of cause and whether work-connected or not. See Ursi v. County Employes Pension Comm'n, Essex County, 120 N.J.L. 52, 53 (Sup. Ct. 1938).
The first paragraph of N.J.S.A. 43:10-4 permits the Commission, on its initiative, to retire those in the county employ who suffer a permanent disability by reason of injury, accident or sickness "incurred at any time in the service, which permanently incapacitates him * * *." The first paragraph of the statute further provides that the pension shall be granted "upon the certificate of a physician designated for that purpose by the pension commission * * *." We construe this paragraph of the statute to be applicable only if the "permanent disability" is work-connected, regardless of age or length of service, when the Commissioners initiate *487 the retirement procedure. Since none of the pensions granted in the instant case was initiated by the Commission, this paragraph of the statute is not involved, except to the extent that it is indicative of the legislative intent that the Commission has the duty of determining eligibility and not the examining doctor. Wagner v. County Employees Pension Comm'n, Essex County, 130 N.J.L. 230 (E. & A. 1943).
It is under the second paragraph of N.J.S.A. 43:10-4 that most of the county employees here involved applied for and were granted pensions. A fair reading of this paragraph clearly indicates again that the Commission must determine whether to grant a disability pension, and not the examining doctor. It prescribes that the Commission "shall call to its aid a regularly licensed and practicing surgeon or physician and the person making the application may likewise call to his aid a regularly licensed and practicing surgeon or physician * * *." The statute does not make the doctors' reports binding upon the Commissioners. Significantly, if an employee's doctor disagrees with the Commission's doctor as to the employee's "permanent disability," the Commission "may" call a third doctor. All these provisions are made to aid the Commission in making its ultimate determination. See Ruvoldt v. Nolan, 63 N.J. 171, 180-181 (1973), wherein the court stated: "The commission decides by resolution whether the applicant is entitled to the pension and is required to consider the physicians' determinations in that regard." (Emphasis added). This is iterated in the statute's last sentence.
* * * The commission shall decide, by resolution, whether the applicant is entitled to the benefits of this article and shall consider the physicians' or surgeons' determination in reaching its decision. [Emphasis added]
This same theme is again repeated in the applicable portion of N.J.S.A. 43:10-11 which provides:
*488 The pension commission shall have control and management of the funds and of the retirement of the county employees, and may make all necessary rules and regulations regarding the same not inconsistent with this article. All retirements shall be made and pensions allowed by the pension commission. [Emphasis added]
The fact that statutory pension provisions for employees other than county employees may place responsibility for retirement on medical certifications alone is not dispositive of the issues before us. Appellants' reliance on these statutory provisions is misplaced. We are relegated to and concerned with the legislation covering pensions for county employees which we find places the responsibility of granting pensions squarely upon the Commission, and not upon the doctor as asserted by appellants.

II.
Appellants contend they were not guilty of misconduct in office because they were under no statutory duty to determine, with respect to employees with less than 20 years service, whether their alleged disability claims for pensions were work-connected. They assert that the test to determine disability is "permanent disability" regardless of cause or whether work-connected. They assert that the test to determine disability is "permanent disability" regardless of cause or whether work-connected. They analogize the term used in N.J.S.A. 43:10-3 ("physically unfit for further service") with the term used in N.J.S.A. 43:10-4 ("permanent disability"), and conclude the statutes only differentiate degree or level of disability, not the cause of disability. We disagree.
N.J.S.A. 43:10-4, in relevant part, specifically provides:
A county employee who shall have received a permanent disability by reason of injury, accident or sickness, incurred at any time in the service, which permanently incapacitates him, shall * * * be retired on half pay. [Emphasis added]
Our interpretation of this section of the statute is reflected in the analytical treatment it received in Ursi v. County Employes *489 Pension Comm'n, Essex County, 120 N.J.L. 52 (Sup. Ct. 1938), wherein Justice Heher said:
The legislative scheme is to be gleaned from all the provisions of the enactment, taken and compared together. While in this particular, at least, the language employed may be said to be lacking in clarity, it cannot reasonably be gainsaid that the act classifies disability as respects a causal relation to the service. Where it has no such relation, the employee is, by section 3, granted the right of retirement, even though he has not reached the age of sixty years (the time when, under section 1, his right to retirement accrues, irrespective of physical condition), provided he has been in the service for twenty years. But where the disability results from "injury, accident or sickness, incurred at any time in the service," section 5 confers the right of retirement regardless of the length of the service, if permanent incapacity ensues. This section treats of disability flowing from injury, accident or sickness arising out of the employment; and any doubt as to the legislative meaning respecting the period of service is dispelled by the use of the phrase "at any time" in laying down the requirements of pensionable disability under this head. The reasonable intendment is that the pension right accrues upon the happening of the prescribed event, i.e., permanent incapacity of the stated class, no matter when it occurs. [at 53; emphasis added]
See also to the same effect, Wagner v. County Employees Pension Comm'n, Commission of the County of Essex, 129 N.J.L. 288, 289 (Sup. Ct. 1942), rev'd on other grounds 130 N.J.L. 230 (E. & A. 1943); Meehan v. County Employees' Pension Comm'n, Essex County, 133 N.J.L. 212 (Sup. Ct. 1945), aff'd 135 N.J.L. 17 (E. & A. 1946).
We, therefore, conclude that appellants had the obligation to determine whether employees seeking pensions under N.J.S.A. 43:10-4 were permanently disabled, and whether such disability was work-connected.

III.
Appellants further contend they were not guilty of misconduct in office, as one of the bases charged in the indictment, because they were under no statutory duty to prohibit the reinstatement of employees to the pension fund who had previously withdrawn from the pension fund. The Commission's *490 practice in this regard varied through the years. Initially, all who sought reinstatement were required merely to repay the funds withdrawn. Subsequently, at the advice of their auditor, the procedure was changed so that employees under 45 years of age had to pay into the fund 3% of their annual salaries received for each of the years they were employed. Employees over 45 were required to pay 3% of their present salaries received for the years they were employed. The rule promulgated by the Commission in this respect was contained in a form signed by withdrawing employees which provided:
I am aware that in withdrawing this money, I will cease to have any claim against the Pension Fund and that upon acceptance of this refund I will be ineligible to join at any time in the future.
Admittedly, no express statutory provision exists to permit or to prohibit reinstatements after withdrawals, but it was appellants' implicit duty to preserve and not permit misuse of public funds. Their flagrant disregard of their own rules is relevant to the extent that the jury may infer misconduct when one considers that the pension fund in question had an actuarial deficit of about $2,000,000 in 1968. The effect of the reinstatements was to make the pension fund a credit union for employees who entered and left at will. As indicated, the fact that the pension statutes do not specifically mandate that appellants prohibit reinstatements is not dispositive of their duties. The power to act imports a duty to act when the public interests suggest to the public officials that something should be done. McDonough v. Roach, 35 N.J. 153, 157 (1961).

IV.
As previously indicated, appellants' principal argument is that they are not guilty of misconduct in office because the State has failed to show they willfully breached a clearly imposed *491 statutory duty. Again, we disagree. Much of what has heretofore been said is equally applicable to appellants' instant contention.
Certain general legal principles should be initially recognized. Penal statutes must be strictly construed, and criminal responsibility must rest upon clear and direct statutory language. State v. Carbone, 38 N.J. 19 (1962); State v. Fair Lawn Service Center, Inc., 20 N.J. 468 (1956). However, "reason is the soul of law" and "scholastic strictness is to be avoided in the search for the legislative intention." San-Lan Builders, Inc. v. Baxendale, 28 N.J. 148, 155 (1958). In order to arrive at the legislative purpose, the judicial function is to interpret and reconcile statutory phraseology. State v. Provenzano, 34 N.J. 318, 322 (1961). Finally, penal statutes should be construed with common sense consonant with the Legislature's objectives. United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952); State v. Provenzano, 34 N.J. 318, 322 (1961); 3 Sutherland, Statutory Construction (3 ed. 1943), § 5606 at 57.
These general legal principles are particularly applicable when construing statutes relating to duties of public officials. Appellants stand in a fiduciary relationship to the public and the employees of Hudson County for whom they have been elected or appointed to serve.
* * * As fiduciaries and trustees of the public weal they are under an inescapable obligation to serve the public with the highest fidelity. In discharging the duties of their office they are required to display such intelligence and skill as they are capable of, to be diligent and conscientious, to exercise their discretion not arbitrarily but reasonably, and above all to display good faith, honesty and integrity. * * *
These obligations are not mere theoretical concepts or idealistic abstractions of no practical force and effect; they are obligations imposed by the common law on public officers and assumed by them as a matter of law upon their entering public office. [Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 474-476 (1952), cert. den. 344 U.S. 838-839, 73 S.Ct. 25, 97 L.Ed. 652 (1952)]
*492 When construing statutes which prescribe the duties and obligations of public officials, we recognize that it is a practical impossibility to spell out with specificity every duty of the office and, therefore, courts take judicial notice of the duties which are inherent in the very nature of the office. See State v. Winne, 12 N.J. 152 (1953); State v. Weleck, 10 N.J. 355 (1952); State v. Gleitsmann, 62 N.J. Super. 15 (App. Div. 1960), certif. den. 33 N.J. 386 (1960); 2 Schlosser, Criminal Laws of New Jersey (3 ed. 1970), § 74:2 at 288-289; 63 Am. Jur.2d, Public Officers and Employees, § 347 (1972).
Having in mind the uncontroverted facts pertaining to the granting of John J. Kenny's pension without even a prior medical examination, it is obvious that there was sufficient credible evidence presented by the State to sustain appellants' convictions for conspiracy and the illegal granting of Kenny's pension. Appellants' continued insistence that we should not give too much weight to the Kenny pension because it must be considered as tainted by the entire proceedings, has a very hollow ring.
The facts surrounding the Kenny pension, standing alone, even though there are additional grounds as herein discussed, are sufficient also to sustain the conviction for misconduct in office. The pension statutes for county employees, when considered as a whole, impose upon appellants as a Commission the inherent duty of promulgating appropriate rules and regulations to guide its examining physician, its employees and its own actions, specifying when an employee is "physically unfit" for further service, and when he is permanently disabled so as to be deemed "permanently incapacitated." See N.J.S.A. 43:10-11. Appellants had the duty of checking and following up on the eligibility of each applicant applying for a pension. It was their duty and obligation to do everything reasonably foreseeable to enhance and preserve the pension funds submitted to their trust.
We recognize that it is often difficult to draw a line between negligent conduct and unlawful conduct, but the standards *493 fixed in State v. Begyn, 34 N.J. 35 (1961) by Justice Hall are worth repeating:
* * * The degree or nature of the requisite evil will vary with the situation. For example, in nonfeasance, intentional and deliberate refusal or forbearance to perform one's clear duty, without lawful excuse, sufficiently described by the phrase "wilfully and unlawfully" is adequate, whereas mere negligence or honest mistake of judgment is not enough.... And in all misconduct cases, even though it may be impossible to present direct proof of an express agreement, "actions speak louder than words" in the search for corruption. [at 50; emphasis added]
When appellants' actions over a three-year period, as disclosed by the record, are considered in totality, their actions do speak louder than words. The conclusion is inescapable that appellants willfully and corruptly failed to carry out their statutory duties, and the jury had ample testimony before them upon which to convict appellants.

V.
Appellants Deegan, Stapleton and McLaughlin contend that the trial court erred in permitting portions of their grand jury testimony to be submitted to the jury at the trial, because they testified involuntarily, under pressure, and without proper advice as to their constitutional rights. They argue that Daniel Gilmore, then the first assistant counsel for Hudson County, advised them that they would lose their jobs if they refused to testify. The advice given was wrong. As a result of, and to overcome the decision in Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), the Legislature adopted N.J.S.A. 2A:81-17.2a et seq. (effective May 21, 1970). This new statute required public employees to appear and testify before grand juries concerning the conduct of their offices, upon the penalty of removal. However, it cured the prior constitutional defect by giving them use immunity for their compelled testimony.
The erroneous advice given appellants does not render their grand jury testimony inadmissible. State v. Stilwell, *494 97 N.J. Super. 424 (App. Div. 1967), is inapposite. Appellants were advised by the prosecuting authorities to consult counsel. They were told they would be called as grand jury witnesses provided they voluntarily waived their privileges and immunities and executed a written waiver. The waiver they signed, and which was read to them before they testified, provided:
I [appellant], a member of the Hudson County Employees' Pension Commission, have been advised and know now that by executing this waiver, I thereby waive all immunity from prosecution, as well as all right and privilege I may have under N.J.S. 2A:81-17.2al, or otherwise, to prevent the testimony I give before the Hudson County Grand Jury from being used against me in any subsequent criminal proceeding. I have also been advised and know now that if I testify, any testimony that I give may be transcribed and introduced in evidence against me in any subsequent criminal proceeding. I have also been advised and know now that I have a right to talk to a lawyer for advice before giving any testimony before the Grand Jury.
With a full understanding of my rights and without any promises or representations being made to me or any express or implied coercion by statute or otherwise of any kind whatsoever being exerted against me, I am willing to testify before the grand jury of Hudson County; I waive immunity from prosecution for any offense which shall be disclosed or indicated by my testimony or statement, now or in the future, before the Grand Jury; and I further waive all right and privilege I may have under N.J.S. 2A:81-17.2a1, or otherwise, to prevent the testimony I give before the Grand Jury from being used against me in any subsequent criminal proceeding. * * * [Emphasis added]
See State v. Falco, 60 N.J. 570, 578 (1972), wherein former Chief Justice Weintraub expressed the view that he doubted the United States Supreme Court still subscribed to the implied thesis in Garrity that "any" pressure generated by a proper pursuit of a governmental interest offends the Fifth Amendment privilege.
In any event, even if it could be said that appellants' grand jury testimony was improperly admitted into evidence, it was harmless beyond a reasonable doubt because the same evidence was adduced at trial through the testimony of Dorothy Reith and Michael Casserly. Milton v. Wainwright, 407 *495 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), reh. den. 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); State v. Bankston, 63 N.J. 263 (1973).

VI.
Finally, Deegan contends his concurrent sentences of 1-2 years in State Prison "was manifestly unfair." He bottoms this contention on the disparate sentences given his codefendants.
While we have the power to reduce a sentence, even if it is within statutory limits, State v. Bess, 53 N.J. 10 (1968), we will not do so absent a clear showing by defendant of abuse of judicial discretion. State v. Tyson, 43 N.J. 411, 417 (1964), cert. den. 380 U.S. 987, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1965); State v. Provoid, 110 N.J. Super. 547 (App. Div. 1970). Here Deegan was the chief county executive and the oldest in point of service on the Commission. His breach of the public's trust warranted the custodial sentence imposed. Nor is there any sound reason to reduce his sentences because of the alleged disparity between his sentences and the ones imposed on his codefendants. State v. Gentile, 41 N.J. 58 (1963).
Affirmed.
MATTHEWS, J.A.D. (concurring).
I concur in the result reached by the majority insofar as it affirms the convictions of the defendants, since the record contains sufficient credible evidence from which the jurors could have found that each of the defendants conspired to grant a pension to one John J. Kenny, granted such pension, and thereby committed misconduct in office. The proofs unquestionably disclose that Kenny, who had less than 20 years service, was granted a pension without a medical certificate, and although *496 a certificate was later obtained, no physical examination was ever conducted. I believe that the poorly drawn indictment adequately charges those crimes.
I disagree, however, with those parts of the majority opinion which hold that the provisions of N.J.S.A. 43:10-1 et seq. impose duties on defendants as pension commissioners to question medical certifications, determine whether disabilities of employees with less than 20 years service are work-connected, and to refrain from reinstatement of employees who had previously withdrawn from the pension fund. In my judgment, the standards sought to be imposed result from strained statutory construction, leading to debatable legal conclusions which, when established as a standard of criminal conduct, constitute an example of judicial ingenuity warned against by former Chief Justice Weintraub in his concurring opinion in State v. Cohen, 32 N.J. 1, 10 (1960).