117 N.J. Super. 586 (1971)
285 A.2d 275
JOHN J. O'CONNOR, ROBERT C. BOTTI AND JOSEPH CAPUANO, PLAINTIFFS,
v.
HARRY M. CALANDRILLO, JR., PAUL J. LOMBARDO, JAMES E. LAGOMARSINO, FRANK X. CLARK, AND WILLIAM J. MEEHAN, JOINTLY, SEVERALLY AND AS MEMBERS OF THE BOARD OF COMMISSIONERS OF THE CITY OF UNION CITY IN THE COUNTY OF HUDSON, LAWRENCE P. PARACHINI AND HARRISON C. HULTMAN, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 20, 1971.
*587 Mr. George J. Kaplan, attorney for plaintiffs.
Mr. Victor P. Mullica, attorney for defendants.
LARNER, A.J.S.C.
The City of Union City is governed by a board of commissioners pursuant to the form of government authorized by the Walsh Act, N.J.S.A. 40:70-1 et seq. Plaintiffs, as residents and taxpayers of the city, brought this action in lieu of prerogative writs attacking the right of three of the commissioners to hold other paid positions in the municipality. A further charge relating to the validity of positions held by two other officials, Frank X. Clark and Lawrence P. Parachini, has already been determined by this court in an oral opinion. Consequently, this opinion will deal only with the issues involving defendants Harry M. Calandrillo, Jr., Paul J. Lombardo and James E. Lagomarsino.
Since the facts are not in dispute, counsel stipulated on the return date of the order to show cause that the court consider the matter in the procedural status of cross-motions for summary judgment.
Calandrillo, Lombardo, Lagomarsino, Clark and Meehan were elected as commissioners of Union City on May 12, 1970 and assumed their offices on May 19, 1970. At the *588 organization meeting, pursuant to the applicable statute, the commissioners were assigned to head the five separate departments as follows:
William J. Meehan  Public Works Harry M. Calandrillo, Jr.  Public Safety Paul J. Lombardo  Revenue and Finance James E. Lagomarsino  Public Affairs Frank X. Clark  Parks and Public Property
Each of the commissioners receive a salary of $7500 a year and William J. Meehan receives an additional $500 as mayor.
On or about July 17, 1970 Lagomarsino, as Director of Public Affairs, appointed his fellow commissioner, Calandrillo, to a position designated as Advisor of Veterans' Affairs at an annual salary of $3900. Prior thereto, Calandrillo had been on leave of absence from his former position as a municipal police officer.
On January 7, 1971 there was a reshuffling of the departments among the commissioners, with the following result:
William J. Meehan  Public Affairs Harry M. Calandrillo, Jr.  Public Works Paul J. Lombardo  Public Safety James E. Lagomarsino  Revenue and Finance Frank X. Clark  Parks and Public Property
Shortly thereafter, on January 16, 1971, a series of events took place which gave rise to this litigation. (1) Calandrillo gave up his job as Advisor of Veterans' Affairs, terminated his leave of absence with the police department, and was assigned to the Detective Bureau by the new Director of Public Safety, Lombardo, at an annual salary of $11,124. Subsequently, on June 9, 1971, he was promoted by his superior to the position of acting sergeant and has been serving in the dual posts of police sergeant and city commissioner to this date. (2) Lombardo, in turn, was named as secretary of the Board of Assessors at an annual salary *589 of $7500 by his fellow commissioner Lagomarsino, in his capacity as Director of Revenue and Finance, and has been serving in the dual posts of secretary to the Board of Assessors and commissioner to this date. (3) Lagomarsino, in turn, was named as Advisor of Veterans' Affairs at an annual salary of $3900 by his fellow commissioner Meehan, in his capacity as Director of Public Affairs, and has been serving in the dual posts of Advisor of Veterans' Affairs and commissioner to this date.
Plaintiffs assert that the appointment of the three commissioners to the additional city posts is illegal because of common law incompatibility and certain statutory prohibitions. As to the common law inhibition, the key issue is whether the posts assumed by the three commissioners are incompatible with their elective offices as members of the governing body, so as to prohibit them from continued holding of the dual offices.
Regardless of the existence of specific statutory prohibitions, the common law doctrine of incompatibility has developed as a matter of public policy in order to insure that there be the appearance as well as the actuality of impartiality and undivided loyalty. Ahto v. Weaver, 39 N.J. 418, 433-434 (1963) (dissenting opinion). Incompatibility exists "where in the established governmental scheme one office is subordinate to another, or subject to its supervision or control, or the duties clash, inviting the incumbent to prefer one obligation to another." Reilly v. Ozzard, 33 N.J. 529, 543 (1960); McDonough v. Roach, 35 N.J. 153, 155-157 (1961). See also, Ahto v. Weaver, 39 N.J. 418, 422-424 (1963); Jones v. MacDonald, 33 N.J. 132, 136-138 (1960); State ex rel. Clawson v. Thompson, 20 N.J.L. 689, 690 (Sup. Ct. 1846). If the duties of the two offices are such that when "placed in one person they might disserve the public interests, or if the respective offices might or will conflict even on rare occasions, it is sufficient to declare them legally incompatible." De Feo v. Smith, 17 N.J. 183, 189 (1955).
*590 In De Feo the offices in question held by defendant were as elected freeholder of Atlantic County and as appointed member of the Atlantic County Board of Taxation. The court concluded that the offices were incompatible, pointing out:
The county board of taxation is under the control of the board of chosen freeholders in all matters concerning its actual physical make-up and existence. It sets the salaries of the secretary of the tax board, establishes the number of employees and their emoluments, and determines the board's budgetary allotments each year. In effect, the board of chosen freeholders controls the purse strings, determines the expenditures and has the right and power to establish and fix the size of the office of the tax board, the number of administrative assistants and the operating overhead.
The defendant as a member of the tax board would in effect be requisitioning from himself as a freeholder an allotment of public funds for the transaction of public business. The performance of one of his offices would automatically enrich the coffers of the other, thereby eliminating an element of independent control of the public moneys to be expended. These two capacities may well conflict in the public interest and are difficult of reconciliation. Not only might the dual office-holding hinder the defendant's own freedom of discretion, but his conclusions could conceivably also unconsciously impair and influence the free choice of the remaining members of both boards. [17 N.J. at 189]
As members of the board of commissioners, Calandrillo, Lombardo and Lagomarsino, with their colleagues, Meehan and Clark, have full control over the affairs of the municipality in all phases of government. N.J.S.A. 40:72-2. Under this broad grant of powers they may determine the powers and duties of each department and its employees. This includes the power to define the qualifications, functions and duties of all officers and employees, the conditions and terms of their employment and the salaries to be paid to them. N.J.S.A. 40:72-5; N.J.S.A. 40:73-6.
It is thus conceivable that Lagomarsino, as commissioner, would be called upon to determine whether he, as Advisor of Veterans' Affairs, should receive a higher salary; whether the qualifications of his office should be modified; whether a term of office should be established; whether his duties *591 should be circumscribed or increased; or whether the positions should be abolished altogether.[1]
The same potential of conflict of interest exists with respect to Calandrillo, as commissioner and police sergeant, as well as Lombardo, as commissioner and secretary of the Board of Assessors.
As observed by our Supreme Court in Jones v. MacDonald, supra:
It is no answer to say that the conflict in duties outlined above may never in fact arise. * * * Nor is it an answer to say that if a conflict should arise, the incumbent may omit to perform one of the incompatible roles. The doctrine was designed to avoid the necessity for that choice. [33 N.J. at 138]
Although the particular offices or positions to which these three commissioners were assigned are not incompatible with their offices as commissioners in the sense of function, nevertheless they are clearly incompatible within the broad sense of the evil sought to be avoided by the salutary rule invoked in the interest of the public.
Each of the additional posts assumed by these commissioners is subordinate to the board of commissioners of which they are members, and each of them is subject to the control of that board. This control is real and meaningful, for it affects the very existence of their positions and the emoluments received by them. For them to continue in these dual positions would deprive the citizens of the municipality of the independent judgment of these elected officials whenever an issue might arise affecting their respective jobs. And this public deprivation is not only measured by the absence of independence of judgment of the three individuals involved but also by their influence upon each other and their *592 other colleagues on the board  an influence which has already manifested itself in the manner in which the appointments came into being in January 1971. See De Feo v. Smith, supra, 17 N.J. at 189.
It is therefore determined on the basis of the applicable common law doctrine that the dual posts held by Calandrillo, Lombardo and Lagomarsino are legally incompatible and that they cannot continue to hold the same.
In view of this conclusion it becomes unnecessary to consider whether certain provisions of the Consolidation Act, L. 1908, c. 179, §§ 6 and 100, prohibiting dual office holding, are still viable in the government of Union City, or whether N.J.S.A. 40:46-5 prevents the dual office holding herein. See also N.J.S.A. 40A:9-4(4)a and its current effect on the dual office provision of N.J.S.A. 40:46-5, in light of the schedule of repealers in N.J.S.A. 40A:9-175.
At this point it is the court's duty to delineate the method of implementation of the judgment that Calandrillo, Lombardo and Lagomarsino cannot continue to hold the dual posts. The generally accepted common law rule dictates that by the acceptance of an incompatible office, the office holder has made a binding election which ipso facto vacates the first office. De Feo v. Smith, supra, at 190; Kobylarz v. Mercer, 130 N.J.L. 44, 46 (E. & A. 1942); Tonkin v. Kenworthy, 112 N.J.L. 274, 280 (Sup. Ct. 1933); Wescott, Attorney-General v. Scull, 87 N.J.L. 410 (Sup. Ct. 1915). In the context of this case the strict application of this rule would mean that the three defendants would be derived of their offices as commissioners and that said offices would be declared vacant.
This rule, however, should not be applied inalterably in all fact situations. McDonough v. Roach, supra, 35 N.J. at 159. The public interest and welfare should be the paramount and controlling factor. To declare the office of commissioner vacant in each instance would frustrate the public will expressed in the elective process and compel the incumbent to accept the lesser post to which he was appointed, *593 without the approval of the voters of the community. If the three commission offices were declared vacant, the absence of an available quorum on the board would involve substantial confusion and expense brought about by the requisite interim appointment of commissioners by the Governor and a special election thereafter. See N.J.S.A. 40:72-15.1 and 15.2. Such a result would appear to be an inappropriate subordination of reason to rule.
In McDonough the Supreme Court solved this problem by granting to defendant the option to elect which office he sought to retain. See also, McCue v. Antisell, 105 N.J. Super. 128, 131 (App. Div. 1969); Woodhull v. Manahan, 85 N.J. Super. 157, 168 (App. Div. 1964); Commonwealth ex rel. Crow v. Smith, 343 Pa. 446, 23 A.2d 440, 442, n. 3 (Sup. Ct. 1942); Commonwealth ex rel. Ryan v. Haeseler, 161 Pa. 92, 28 A. 1014 (Sup. Ct. 1894).
In the particular circumstances herein the court is of the opinion that neither the mandatory election of the later position nor the optional election of either position should be invoked. It is as reasonable and logical to conclude that the later appointment is void because of its incompatibility with the first office and that as a consequence the later position should be declared vacant.
It will therefore be ordered that (1) the position of secretary of the Board of Assessors held by Paul J. Lombardo be declared vacant, (2) that the position of Advisor of Veterans' Affairs held by James E. Lagomarsino be declared vacant, and (3) that Harry M. Calandrillo, Jr. be returned to his former status as a member of the police force on leave of absence without pay, subject to applicable laws and Civil Service regulations.
In addition to the attack upon defendants' right to hold the dual offices, plaintiff also seeks a judgment directing them to refund to the city the salary paid to them in connection with their appointive positions. Defendants, in reply, assert that they received compensation while acting at least as defacto officers and, therefore, should not be compelled to *594 refund the moneys to the city treasury. In support of this position defendants rely upon the opinion of the Appellate Division in Jersey City v. Dept. of Civil Service, 57 N.J. Super. 13 (1959).
In that opinion Judge Goldmann presented a comprehensive review of the law pertaining to de facto officers and concluded that in New Jersey a de facto holder of a position who actually rendered services in good faith should receive the compensation of the office. See also, Erwin v. Jersey City, 60 N.J.L. 141 (E. & A. 1897). The doctrine has in fact been codified by legislation in this State, which reaffirms the policy of payment of compensation to a person who holds an office or position de facto. N.J.S.A. 40:11-7.
It is significant, however, that every judicial expression espousing the policy of payment of compensation to a de facto holder of a position contains the caveat that the service must have been rendered in good faith and without dishonesty or fraud. It is also significant that the doctrine, as it applies to the compensation rights of the holder of the de facto office (as distinguished from the rights of the innocent members of the public in dealing with the de facto officer), has not been involved in any cases in this State dealing with dual office holding.
In De Fazio v. Mayor, etc., Hoboken, 12 N.J. Super. 515 (1961), the Appellate Division denied recovery for services performed by plaintiff in the position of assistant city attorney which was created by an ordinance declared to be invalid. In discussing the application of the de facto doctrine, the court referred to the authorities in other jurisdictions, noting:
The second largest class includes those cases in which the de facto officer in good faith and with a reasonable and conscientious belief of his authority performs under color of title the duties of the office.

........
Fundamentally, it must be realized that the doctrine pertaining to the activities of de facto officers had its origin in the policy of the public interest and protection. Not unlike many other beneficial *595 doctrines of the law and indeed advantageous legislation, it is not permitted to be utilized for mischievous purposes. [at 519-520]
In defining "good faith" the court borrowed from Bouvier's Law Dictionary, concluding:
Good faith has been defined to consist of an honest intention to abstain from taking an unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of notice, information or belief of facts which would render the transaction or undertaking mischievous and insidious.
Utilizing the foregoing definition as a polestar, it is manifest that the three commissioners participated in the overall plan of re-assignment of departments and the creation of dual positions for themselves, with full knowledge of the potential infirmity of their action. They assumed that their control of the governing body was the vehicle through which they could provide additional income for themselves on the hopeful chance that the inertia of the public would guarantee the absence of legal attack in the courts. And if litigation ensued, they would at least retain the emoluments of the second position in the meantime.
This mental reservation can be gleaned from defendants' actions and their administration sometime subsequent to their appointment to the additional positions. On August 16, 1971 A.R. Mangione, Jr., Director of Classifications of Local Government Service of the Civil Service Department of New Jersey, forwarded letters to Lombardo, Meehan and Lagomarsino relating to the dual positions held by defendants in their respective departments. The letters pointed out that it was the opinion of the Attorney General that the holding of the appointive position in each instance was incompatible with the elective position of commissioner. The letter further gave notice that if the name of each appointee continued to appear on the payroll of the department after September 3, 1971, the wages allotted would be disapproved.
Despite this warning defendants, with the apparent co-operation of their colleagues on the commission and the *596 disbursing officials, continued to draw their salaries, at least until the date of hearing on November 12, 1971.
The court must therefore conclude that defendants did not act in their respective de facto offices in good faith. A financial reward to them for undertaking this abortive game of chance should not be permitted at the expense of the taxpayers of the municipality. Their actions do not bespeak the good faith required to invoke the rule of fairness and justice which underlies the grant of compensation to a de facto officer. The same rationale is appropriate in construing the parallel statutory provision cited above, N.J.S.A. 40:11-7, which presupposes the requisite of good faith for its application. See De Fazio, supra, 12 N.J. Super. at 522.
The judgment of the court will therefore include a direction that (1) Calandrillo repay to Union City all moneys received by him as Advisor of Veterans' Affairs and as a member of the police department while serving as commissioner, (2) Lombardo repay to Union City all moneys received by him as secretary of the Board of Assessors while serving as commissioner, and (3) Lagomarsino repay to Union City all moneys received by him as Advisor of Veterans' Affairs while serving as commissioner. Counsel should stipulate the amount involved in each instance so that the order may include the dollar amount of the judgment in favor of Union City as against each affected defendant.
NOTES
[1] It also appears that he was on the commission when an ordinance was adopted on February 18, 1971 creating the office, formally designated as "Veterans' Service Officer," defining his duties and establishing a salary range.