380 So.2d 1102 (1980)
David GRYZIK and Donald Hood, Appellants,
v.
STATE of Florida, Appellee.
Nos. NN-327, NN-328.
District Court of Appeal of Florida, First District.
March 4, 1980.
Rehearing Denied April 2, 1980.
*1103 Maurice Graham of Brimmell & Graham, Fort Lauderdale, for appellants.
Jim Smith, Atty. Gen., and Miguel A. Olivella, Jr., Asst. Atty. Gen., for appellee.
PER CURIAM.
Gryzik and Hood appeal their convictions for possession of marijuana contending that the trial court erred in denying their motions to suppress on numerous grounds, including the ground that Agricultural Inspector Leonard Pease was not authorized to stop the truck in which appellants were riding because Pease violated the prohibition against dual office holding and therefore, was not an agricultural inspector at the time of the stop since this office would have been vacated as a matter of law. Appellants also contend that there was an impermissible comment on silence and that there was no valid consent to the search. We affirm on all points.
On May 17, 1978, the appellants were stopped by Inspector Pease when the truck bypassed an agricultural inspection station. After receiving consent to inspect, Pease smelled the strong odor of marijuana and saw four large black plastic bags in the *1104 truck.[1] After requesting appellants' return to the station, the truck sped away and a chase ensued with Pease and a highway patrolman in pursuit. They apprehended appellants, searched the truck, and seized the contraband. At the suppression hearing, Pease testified that in March, 1978, after being commissioned as an agricultural inspection officer, he was also appointed part-time deputy sheriff.
First, appellants urge that the common law doctrine of incompatibility precludes Inspector Pease from holding the above offices simultaneously. However, we find the doctrine of incompatibility to be inapplicable here. The rule is:
Incompatibility exists "where in the established governmental scheme one office is subordinate to another, or subject to its supervision or control, or the duties clash, inviting the incumbent to prefer one obligation to another." ... If the duties of the two offices are such that when "placed in one person they might disserve the public interests, or if the respective offices might or will conflict even on rare occasions, it is sufficient to declare them legally incompatible."
O'Connor v. Calandrillo, 117 N.J. Super. 586, 285 A.2d 275, 277 (Super.Ct.Law Div. 1971) affirmed, 121 N.J. Super. 135, 296 A.2d 326 (Super.Ct.App.Div. 1972), cert. denied, 412 U.S. 940, 93 S.Ct. 2775, 37 L.Ed.2d 399 (1973). Upon careful review of the statutory duties and powers existing in each office, we fail to perceive any incompatibility.[2]
Secondly, appellants argue that Article II, Section 5(a) of the Florida Constitution prohibits dual office holding. The constitutional provision reads in pertinent part: "No person shall hold at the same time more than one office under the government of the state and the counties and municipalities therein".
Although Pease did not take the oath of office as deputy sheriff, we will assume that the appointment to the office of deputy sheriff triggers application of the constitutional prohibition. Ordinarily, acceptance of one office while holding another office results in a vacancy of the first office. In re Advisory Opinions to the Governor, 76 Fla. 417, 79 So. 874 (1918). The constitutional prohibition provides no sanction for its violation and it is apparent that the general rule was adopted from the generally accepted common law rule that by the acceptance of an incompatible office, the officeholder had made a binding election which ipso facto vacated the first office. E.g., O'Connor v. Calandrillo, supra, 285 A.2d at 278. Although Florida recognizes this rule, it appears Florida also recognizes that in such a situation the officer becomes a de facto officer as to the first office.[3]
*1105 In State v. Byington, 168 So.2d 164 (Fla. 1st DCA 1964), affirmed 178 So.2d 1 (Fla. 1965), an executor of a will challenged the county court judge's jurisdiction to enter orders directed to the executor on the ground that the judge was disqualified to act because of a constitutional provision requiring automatic retirement at age seventy. Article V, § 17(1), Fla. Const. This court reasoned:
It is obvious, therefore, that if by virtue of the constitution he became disqualified, immediately upon his 70th birthday, to perform de facto as well as de jure any judicial function in the subject estate, that disqualification is general in character and invalidates all other acts performed by him as county judge since that date.
The writ of prohibition has a narrow scope of operation and may not be resorted to if other adequate remedies are available... .
Quo warranto is an appropriate and adequate remedy to determine the right of an individual to hold a public office. See 27 Fla.Jur., Quo Warranto, Sec. 17, and cases there cited. Where quo warranto is an adequate remedy, it is the only proper remedy and will preclude issuance of a writ of prohibition as a substitute... .
Prohibition goes only to the question of the lower court's jurisdiction. It is available to prevent the exercise of jurisdiction where none exists and where the court exceeds its power. It is apparent here that even if the respondent as a county judge does fall within the automatic retirement provision of the Florida Constitution, such does not ipso facto impair the jurisdiction of his office or the validity of his exercise thereof. Affording relator's position its greatest possible effect, the respondent's status is changed only from that of a de jure judge to a de facto judge, which in no way impairs his jurisdiction. The official acts of a de facto judge are as valid as if he is an officer de jure. State ex rel. Hawthorne v. Wiseheart, 158 Fla. 267, 28 So.2d 589 (1946).
It will not be presumed that the attorney general will fail to perform his duty to bring an action of quo warranto if alerted and the circumstances warrant. It does not appear that he has been so requested herein or that the relator has sought permission to bring the action in his name. See 74 C.J.S. Quo Warranto § 4, p. 182.
We conclude, therefore, that prohibition does not lie upon the second basis suggested by the relator. Under the circumstances, it is unnecessary at this time to pass upon the question of the constitutional right of Judge Byington to continue in office subsequent to attaining the age of 70 years and we decline to do so.
168 So.2d at 174-175. The Supreme Court, entertaining jurisdiction because the decision initially construed a controlling provision of the Florida Constitution, affirmed this court's decision stating that the "appellant has failed to demonstrate that the trial judge has exceeded or proposes to exceed his jurisdiction. Any order which he ultimately enters will be subject to appropriate review on the merits." 178 So.2d at 1.
More specifically, in McGhee v. City of Frostproof, 289 So.2d 751 (Fla. 2d DCA 1974), a defendant sought to disqualify a presiding judge alleging that the judge was a dual officeholder under the constitutional prohibition at issue here. There, although the petitioner requested a grant of a writ of certiorari to decide whether the judge could *1106 lawfully hold two positions in a city government, the court found that "it is patent that appellant sought to review the actions of the city judge in failing to recuse herself upon timely motion therefor." Accordingly, although the petition appeared to sound in quo warranto, the court noted that this remedy could be instituted only by the Attorney General or by a person claiming title to the office. The court addressed the applicability of other remedies:
As to prohibition, such writ only lies to prohibit a judicial or quasi-judicial officer from acting in excess of his jurisdiction. This isn't the case here since, even if the allegations in the petition are true, the city judge would merely be a de facto judge rather than a de jure judge; and such fact would neither impair the jurisdiction of her office nor the validity of the exercise thereof. (footnote omitted)
289 So.2d at 752. The court declined to reach the merits, but rather reversed and remanded the case for further proceedings to permit the circuit judge to review the propriety of the city judge's actions in failing to recuse herself.
Similarly, it is obvious that this proceeding does not in any way involve a direct attack upon Inspector Pease's right to continue in either office. Rather, appellants seek a declaration that Pease was without jurisdiction to act an an agricultural inspector on May 17, 1978. Pursuant to the cases discussed herein, we have determined that even if Pease was in violation of the dual officeholding prohibition, he was acting within his jurisdiction when he carried out the duties of his office, i.e., stopping appellants for bypassing an agricultural inspection station. § 570.15, Fla. Stat. (1977). Moreover, the application of the above rule best serves the public interest and welfare which is the paramount factor in determining the effects of violating the constitutional prohibition which is in essence an expansion of the common law rule of incompatibility.[4] Here we deem it appropriate that Pease's right to continue in office be challenged directly by an ouster proceeding; it should not be determined in a collateral proceeding where the sole effect would be to suppress evidence in a criminal case.[5]
In sum, if we were to recognize the validity of appellants' claim, the public's keen interest in having the laws of this state dutifully executed would be thwarted by a rule regarding the effect of Article II, Section 5, which, ironically, exists to preserve and protect a public interest unrelated to the interests of appellants in suppressing evidence in these collateral-type proceedings.
Accordingly, although we might speculate that Pease may have to vacate one of his positions in a proper proceeding, the constitutional provision requiring that result should not and will not be interpreted to require invalidation of Pease's actions as an agricultural inspection officer, particularly when such actions occurred prior to any proper proceeding and when he was *1107 otherwise duly qualified to act under the laws of this state. The other points raised by the appellants do not require discussion.
AFFIRMED.
MILLS, C.J., and McCORD and BOOTH, JJ., concur.
NOTES
[1] The facts supporting the finding of consent are even more compelling than the facts in Bagocus v. State, 359 So.2d 885 (Fla. 1st DCA 1978), which found consent in an agricultural inspection case.
[2] For examples of incompatibility see, Kaufman v. Pannuccio, 121 N.J. Super. 27, 295 A.2d 639 (Super.Ct.App.Div. 1972), certification denied, 62 N.J. 192, 299 A.2d 726 (Sup.Ct. 1972) (involving city councilman and assistant tax assessor; city councilman and police lieutenant; incompatibility because councilmen could control budget and alter duties of the other offices); Fauci v. Lee, 38 Misc.2d 564, 237 N.Y.S.2d 469 (1963) affirmed, 19 A.D.2d 777, 242 N.Y.S.2d 630 (1963) (involving Police Justice and Family Court Judge, where such judge may be on the county court which may hear appeals from the police court decisions); Tucci v. Nyquist, 66 Misc.2d 808, 322 N.Y.S.2d 476 (1971) (involving member of Board of Education of a school district and office of member of Board of Trustees of a public library established and supported by the school district, problem concerned simultaneous representation of competing interests because the Board of Trustees was authorized to contract for library services with the school district); O'Connor v. Calandrillo, supra, (involving police sergeant and city commissioner; secretary of board of assessors and commissioner; advisor of veterans affairs and commissioner; incompatibility because the dual office holders would have full control over the affairs of the municipality in all phases of government, including salary and office qualifications).
[3] This rule has been applied in a number of jurisdictions. See Annot., 100 A.L.R. 1162, 1187 (1936). See also, In Matter of F.C., 484 S.W.2d 21, 24 (Mo. App. 1972), where, in discussing the common law rule of incompatibility, the court refused to invalidate the action of a juvenile officer, who filed a petition against a juvenile, based upon the grounds of incompatibility with his public office of prosecuting attorney. The court stated:

[T]he surrender of the first office which is implied in the common law rule does not invalidate the acts of the occupant of the first office so far as third persons and the public are concerned, but that occupant becomes a de facto officer until ousted by proper process.
Thus even if validly applicable, the common law principle of incompatibility of offices does not vitiate judicial jurisdiction to proceed on a petition filed by a de facto juvenile officer acting under the color of section 211.081, V.A.M.S.
[4] For example, O'Connor v. Calandrillo, supra, recognized the common law rule that acceptance of incompatible offices vacates the first office, but stated:

This rule, however, should not be applied inalterably in all fact situations... . The public interest and welfare should be the paramount and controlling factor. To declare the office of commissioner vacant in each instance would frustrate the public will expressed in the elective process and compel the incumbent to accept the lesser post to which he was appointed, without the approval of the voters of the community. If the three commission offices were declared vacant, the absence of an available quorum on the board would involve substantial confusion and expense brought about by the requisite interim appointment of commissioners by the Governor and a special election thereafter... . Such a result would appear to be an inappropriate subordination of reason to rule.
Instead, the court ruled the second post vacated. See also, Kaufman v. Pannuccio, supra (where dual officeholder was given 30 days to elect either position).
[5] We observe that there is no dispute concerning whether Inspector Pease was otherwise duly qualified to act as an agricultural inspection officer on May 17, 1978. Compare Holloway v. State, 342 So.2d 966 (Fla. 1977), and cases cited therein. See also, § 570.151, Fla. Stat. (1975).