# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2024-1643
_____

CHRISTOPHER "DOC" BAILEY,

    Appellant,

    v.

RON DESANTIS, in his official
capacity as Governor of the
State of Florida, and WILLIAM
LAURIE, in his official capacity
as Crescent City Commissioner,

    Appellees.

_____

On appeal from the Circuit Court for Leon County.
Angela C. Dempsey, Judge.

August 6, 2025

LEWIS, J.

Appellant, Christoper "Doc" Bailey, appeals the trial court's order denying his amended petition for writ of quo warranto, arguing that the court erroneously rejected his claim that Florida must give full faith and credit to the restoration of his civil right to hold office under Missouri law following his federal conviction. For

the reasons that follow, we disagree with Bailey and affirm the trial court's order.[1]

## BACKGROUND

In October 1995, Bailey was convicted of a federal felony (a violation of 18 U.S.C. § 1001) in the United States District Court for the Western District of Missouri pursuant to a guilty plea.[2]  He was sentenced to five years of probation, which terminated in October 2000.  In 2012, Bailey moved to Florida.  To date, he has not obtained a presidential pardon or a restoration of his civil rights from the Florida Board of Executive Clemency.

In November 2022, Bailey won a seat on the Crescent City Commission, Group 2.  He took the oath of office and began his term on November 14th.  On August 7, 2023, Appellee Governor Ron DeSantis issued Executive Order 23-159, declaring the Group 2 seat on the Crescent City Commission vacant pursuant to article VI, section 4(a) of the Florida Constitution and section 114.01(2) of the Florida Statutes on the asserted basis that Bailey failed to qualify for the office within thirty days from the commencement of the term of office because of his 1995 federal felony conviction.  Following a special election in October 2023, Appellee William Laurie won the Group 2 seat.

Bailey filed an amended petition for writ of quo warranto against Appellees, arguing that the Governor unlawfully removed him from office after falsely claiming that he failed to qualify within thirty days.  Bailey asserted in part that his right to hold office was automatically restored upon his discharge from probation in 2000 by operation of section 561.021.2 of the Missouri Annotated Statutes, and that Florida must give full faith and credit to the restoration of his civil rights pursuant to article IV, section 1 of the United States Constitution.

---

[1] We affirm as to Bailey's remaining arguments without discussion.

[2] *See United States v. Bailey*, 34 F.3d 683 (8th Cir. 1994) (setting forth the factual background of the criminal case).

In denying the amended petition for writ of quo warranto, the trial court concluded that the Full Faith and Credit Clause does not require Florida to treat a federal conviction the same way as Missouri does. The court reasoned that the adoption of Bailey's argument would elevate other states' treatment of federal convictions over the federal government's handling of those convictions; it would be unworkable considering states' widely varying approaches to restoring the civil rights of federal felons; and it would be contrary to the United States Supreme Court's precedent that the Full Faith and Credit Clause does not compel a state to substitute the statutes of other states for its own statutes. The court further determined that even if Florida were required to treat federal convictions as Missouri does, Bailey still could not hold public office in Florida because he is not entitled to hold office in Missouri pursuant to section 115.306.1, Missouri Annotated Statutes. This appeal followed.[3]

## ANALYSIS

Because a writ of quo warranto is an extraordinary writ that is not an absolute right, its granting lies within the court's discretion. *Topps v. State*, 865 So. 2d 1253, 1257 (Fla. 2004). While a trial court's decision on a petition for writ of quo warranto is reviewed for an abuse of discretion, matters of constitutional interpretation are reviewed *de novo*. *Israel v. Desantis*, 269 So. 3d 491, 494 (Fla. 2019) (explaining that "[q]uo warranto is used 'to determine whether a state officer or agency has improperly *exercised* a power or right derived from the State'" (quoting *League of Women Voters of Fla. v. Scott*, 232 So. 3d 264, 265 (Fla. 2017)).

Under article VI, section 4(a) of the Florida Constitution, "[n]o person convicted of a felony . . . shall be qualified to . . . hold office until restoration of civil rights . . . ." Article IV, section 8(a) of the Florida Constitution provides in part that the governor may, with

---

[3] The Governor stated in a footnote of his answer brief that while not addressed by the trial court, Bailey's amended petition for writ of quo warranto also failed because he had an adequate remedy at law in the form of a declaratory judgment. We need not reach this alternative rationale as we affirm the trial court's order on the grounds set forth therein.

3

the approval of two cabinet members, grant full or conditional pardons or restore civil rights. *See also* § 940.01(1), Fla. Stat. (2023) (stating the same); § 944.292(1), Fla. Stat. (2023) (providing that upon a felony conviction, "the civil rights of the person convicted shall be suspended in Florida until such rights are restored by a full pardon, conditional pardon, or restoration of civil rights granted pursuant to s. 8, Art. IV of the State Constitution"). This constitutional provision "'vest[ed] sole, unrestricted, unlimited discretion exclusively in the executive' in restoring civil rights." *Advisory Op. to Governor re Implementation of Amend. 4, The Voting Restoration Amend.*, 288 So. 3d 1070, 1076 n.3 (Fla. 2020) (quoting *Sullivan v. Askew*, 348 So. 2d 312, 315 (Fla. 1977)); *see also Parker v. State*, 263 So. 3d 192, 194 (Fla. 5th DCA 2018) (stating that "[t]he authority to restore civil rights belongs solely to the executive branch and cannot be infringed upon by the legislative or judicial branches," and "the executive branch's authority to restore an individual's civil rights is discretionary").

In this case, it is undisputed that Bailey was convicted of a federal felony in 1995 and that he has not obtained a presidential pardon or a restoration of his civil rights from the Florida Board of Executive Clemency. According to Bailey, Florida must nevertheless consider his civil right to hold office restored pursuant to the Full Faith and Credit Clause of the United States Constitution because it was automatically restored by operation of section 561.021.2 of the Missouri Annotated Statutes upon the completion of his probation in Missouri in 2000. We disagree.

**Full Faith and Credit Clause**

Article IV, section 1 of the United States Constitution states that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." Pursuant to this Clause, Congress has provided that:

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

4

28 U.S.C. § 1738.

The United States Supreme Court has differentiated between credit owed to laws and to judgments. *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 232 (1998). "The Full Faith and Credit Clause does not compel 'a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.'" *Id.* (citation omitted). "Regarding judgments, however, the full faith and credit obligation is exacting. A final judgment in one State . . . qualifies for recognition throughout the land." *Id.* at 232–33. "A court may be guided by the forum State's 'public policy' in determining the *law* applicable to a controversy," but there is "no roving 'public policy exception' to the full faith and credit due *judgments*." *Id.* at 233; *see also Ledoux-Nottingham v. Downs*, 163 So. 3d 560, 563 (Fla. 5th DCA 2015) ("*Baker by Thomas* makes clear that the public policy of one state has no effect on whether the state must give full faith and credit to judgments, rather than law, of another state."), *approved*, 210 So. 3d 1217 (Fla. 2017).

Bailey primarily relies upon two Florida decisions in asserting that Florida must give full faith and credit to Missouri's restoration of his civil rights following his federal conviction. The first of those cases is *Schlenther v. Department of State, Division of Licensing*, 743 So. 2d 536, 536 (Fla. 2d DCA 1998), where the appellant committed a felony in Connecticut, as a result of which Connecticut suspended his civil rights. After Connecticut restored the appellant's civil rights, he moved to Florida. *Id.* at 537. Although the appellee issued a concealed weapon permit to the appellant, it later revoked that permit because he had not sought restoration of his civil rights in Florida pursuant to section 790.23, Florida Statutes, which prohibited a convicted felon from carrying a concealed weapon, unless his civil rights and firearm authority have been restored. *Id.* The Second District concluded that the appellee "erred in revoking appellant's concealed weapon permit because appellant's civil rights had been fully restored in Connecticut prior to appellant's move to Florida, and that restoration of appellant's civil rights is entitled to full faith and credit in Florida." *Id.* at 536–37 (rejecting the appellee's argument that section 944.282(1) and article IV, section 8 required the appellant to apply to the Governor of Florida for restoration of his

5

civil rights). "[O]nce appellant's civil rights were restored by the state that suspended them, the matter was completed, and this State had no authority to suspend or restore those rights here on the basis of that earlier out-of-state suspension." *Id.* at 536. "Once another state restores the civil rights of one of its citizens whose rights had been lost because of a conviction in that state, they are restored and the State of Florida has no authority to suspend or restore them at that point. The matter is simply at an end." *Id.* at 537.

The second case Bailey relies upon is *Doyle v. Florida Department of State, Division of Licensing*, 748 So. 2d 353 (Fla. 1st DCA 1999). Doyle's application for a concealed weapon or firearm permit was denied because he had been convicted of a misdemeanor in New York that would have been a felony if committed in Florida. *Id.* at 354. We reversed based on our reading of section 790.23(1), Florida Statutes, as prohibiting weapon possession "by any person who has been actually convicted of a felony," and not applying "to misdemeanors that are committed in a sister state, regardless of whether such misdemeanors would have constituted felonies if committed in Florida." *Id.* at 354–55. Citing *Schlenther*, we explained that Doyle could not present proof that his civil rights had been restored in Florida because they had never been suspended in New York, and "[t]he governor of Florida has neither the power to restore the civil rights of out-of-state offenders which have already been restored by another state, nor the authority to restore the civil rights of those whose rights were never suspended by another jurisdiction." *Id.* at 356.

As the trial court correctly recognized, *Schlenther* and *Doyle* are distinguishable because they involved another state's treatment of its own conviction, not another state's treatment of a federal conviction, and they said nothing about whether Florida must defer to another state's law on collateral consequences for a federal conviction. Had Bailey been convicted in a Missouri court for a Missouri crime, *Schlenther* and *Doyle* would require Florida to honor Missouri law governing restoration of rights. But that is not the situation here. Bailey was convicted under federal law, and he fails to cite any case holding that the Full Faith and Credit

6

Clause requires Florida to yield to another state's laws with respect to a federal conviction.

This state versus federal felony conviction distinction is significant for purposes of the Full Faith and Credit Clause. *See Jones v. Governor of Fla.*, 975 F.3d 1016, 1056 n.6 (11th Cir. 2020) (Lagoa, J., concurring) ("Indigent felons with out-of-state convictions can seek executive clemency in Florida, *see* Fla. R. Exec. Clem. 5, 10B, or have their rights restored in the state of their conviction, *see Schlenther v. Dep't of State, Div. of Licensing*, 743 So. 2d 536, 537 (Fla. Dist. Ct. App. 1998) . . . Indigent felons with federal convictions can seek executive clemency, *see* Fla. R. Exec. Clem. 5, 10B, or a presidential pardon, *see* U.S. Const. art. II, § 2, cl. 1."); *Thrall v. Wolfe*, 503 F.2d 313, 314–16 (7th Cir. 1974) (concluding that the appellant's prior Montana felony conviction could be considered in ruling on his application for a license as a dealer and manufacturer of firearms under federal law despite the fact that he had obtained a full pardon from the Montana governor because "[n]either the inherent nature of a pardon nor full faith and credit require that a state pardon automatically relieve federal disabilities"); *Carlesi v. People of the State of New York*, 233 U.S. 51, 56–57 (1914) (holding that a New York court could consider a prior federal conviction despite a presidential pardon in applying its enhanced sentencing statute); *Beecham v. United States*, 511 U.S. 368, 370, 374 (1994) (construing provisions of the federal firearms statutes and concluding that the restoration of civil rights by states could not remove the disabilities imposed as a result of federal convictions; rather, civil rights must have been restored under federal law).

The Full Faith and Credit Clause does not require Florida to substitute the statutes of another state for its own statutes. *See Baker by Thomas*, 522 U.S. at 232. Yet, by adopting Bailey's position, we would elevate another state's treatment of federal felony convictions above Florida's treatment of the convictions, and in doing so we would substitute Missouri's statute (section 561.021.2) for Florida's constitutional and statutory provisions (article VI, section 4(a) and section 944.292(1)). Further, article IV, section 8 of the Florida Constitution vests sole and unlimited discretion to restore civil rights in the executive branch, whose authority in that regard cannot be infringed upon by the legislative

and judicial branches, yet the Governor's authority would be limited by the legislative branch of another state under Bailey's interpretation. Florida has an interest in protecting its citizens from convicted felons holding public office in Florida, whereas Missouri has no discernible interest in the matter beyond its borders.

Moreover, we agree with the trial court that the adoption of Bailey's argument could prove unworkable considering states' varying approaches to restoring the civil rights of convicted felons. For instance, had Bailey resided in another state before moving to Florida from Missouri, would Missouri's or that other state's laws govern the suspension and restoration of his civil rights following his federal conviction, or would the answer depend on when he moved to the other state? Lastly, giving full faith and credit to the asserted restoration of Bailey's right to hold public office under section 561.021.2, Missouri Annotated Statutes, is unwarranted for the additional reason that he is disqualified from holding elective public office in Missouri under section 115.306.1, Missouri Annotated Statutes, as we will discuss next. *See Sun Oil Co. v. Wortman*, 486 U.S. 717, 727–30 (1988) ("To constitute a violation of the Full Faith and Credit Clause or the Due Process Clause, it is not enough that a state court misconstrue the law of another State. Rather, our cases make plain that the misconstruction must contradict law of the other State that is clearly established and that has been brought to the court's attention.").

For the foregoing reasons, we conclude that the Full Faith and Credit Clause does not require Florida to defer to a sister state's laws on restoring a person's civil right to hold office following a federal felony conviction.

## Right to Hold Office under Missouri Law

Even if Bailey's interpretation of the Full Faith and Credit Clause were correct, Missouri law prohibits him from holding elective public office. Bailey relies on section 561.021.2 of the Missouri Annotated Statutes to argue that his right to hold office was automatically restored upon his discharge from probation in 2000. Section 561.021.2, Missouri Annotated Statutes (2023), provides as follows:

2. Except as provided in subsection 3 of this section, a person who pleads guilty or nolo contendere or is convicted under the laws of this state of a felony or under the laws of another jurisdiction of an offense which, if committed within this state, would be a felony, shall be ineligible to hold any public office, elective or appointive, under the government of this state or any agency or political subdivision thereof, until the completion of his or her sentence or period of probation.

However, the later-enacted section 115.306.1, Missouri Annotated Statutes (2023), provides that:

1. No person shall qualify as a candidate for elective public office in the state of Missouri who has been found guilty of or pled guilty to a felony under the federal laws of the United States of America or to a felony under the laws of this state or an offense committed in another state that would be considered a felony in this state.

Thus, sections 115.306.1 and 561.021.2 appear to be in conflict regarding qualification for elective public office following a guilty plea to a felony. Section 561.021.2 was enacted in 1977, while section 115.306.1 was enacted in 2015. Courts in both Missouri and Florida adhere to the later-enacted statute rule, making section 115.306.1 controlling. *See Turner v. State*, 245 S.W.3d 826, 829 (Mo. 2008) ("[W]hen two statutory provisions conflict, the later-enacted provision, even when there is no specific repealing clause, repeals the first statute to the extent of any conflict with the second."); *Palm Beach Cnty. Canvassing Bd. v. Harris*, 772 So. 2d 1273, 1287 (Fla. 2000) ("[W]hen two statutes are in conflict, the more recently enacted statute controls the older statute.").

Bailey seeks to distinguish section 115.306.1 from section 561.021.2 on the ground that the former addresses whether an individual may qualify as a candidate on an election ballot while the latter addresses eligibility to hold office, but it makes little sense to disqualify a person from running as a candidate for elected public office yet make him eligible to hold the elected office. Indeed, the Missouri Supreme Court recently stated that "the legislature *has* determined in section 115.306.1 that a plea of guilt

9

is sufficient to disqualify an individual from holding elective public office." *Fletcher v. Young*, 689 S.W.3d 161, 167 (Mo. 2024).

Therefore, under the plain text of section 115.306.1, as confirmed by case law, Bailey is not eligible to hold elective office in Missouri. Thus, even if the Full Faith and Credit Clause required Florida to treat federal convictions as Missouri does, Bailey would still be ineligible to hold elective office in Florida.

### CONCLUSION

Accordingly, we affirm the trial court's order denying Bailey's amended petition for writ of quo warranto.

AFFIRMED.

BILBREY, J., concurs; ROWE, J., concurs with opinion.

––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––

ROWE, J., concurring.

I agree that we should affirm the trial court's order denying Bailey's petition for a writ of quo warranto. But I would affirm because Bailey had an adequate remedy at law, and thus quo warranto was not a proper remedy. *See e.g.*, *State ex rel. Gibbs v. Bloodworth*, 184 So. 1, 2 (Fla. 1938) (explaining that a writ of quo warranto "will not be issued where there is another ample and sufficient remedy provided by law for the relief sought"); *Gryzik v. State*, 380 So. 2d 1102, 1105 (Fla. 1st DCA 1980) ("Where quo warranto is an adequate remedy, it is the only proper remedy . . . ." (quoting *State ex rel. Booth v. Byington*, 168 So. 2d 164, 175 (Fla. 1st DCA 1964))).[1]

---

[1] Appellee raised this ground for affirmance in the trial court and on appeal in the answer brief. *See Robertson v. State*, 829 So. 2d 901, 906 (Fla. 2002) ("[T]he tipsy coachman doctrine allows

Article V, section 5(b) of the Florida Constitution grants circuit courts the power to issue the writ of quo warranto as part of their original jurisdiction. Quo warranto, meaning "by what authority," was a remedy at common law historically used to "test the right of a person to hold an office of franchise or exercise some right or privilege the peculiar powers of which are derived from the state." *W. Flager Assocs., Ltd. v. DeSantis*, 382 So. 3d 1284, 1286 (Fla. 2024) (quoting *State v. Gerow*, 85 So. 144, 145 (Fla. 1920)); 3 William Blackstone, *Commentaries* *262 (under English common law, the writ was "for the king, against him who claims or usurps any office, franchise, or liberty"). In chapter 80, Florida Statutes, the Legislature regulates in certain circumstances when a person may file a petition. *See* § 80.01, Fla. Stat. ("Any person claiming title to an office which is exercised by another has the right, on refusal by the Attorney General to commence an action in the name of the state upon the claimant's relation, or on the Attorney General's refusal to file a petition setting forth the claimant's name as the person rightfully entitled to the office.").

Quo warranto has traditionally been an extraordinary remedy that "should only be employed with great caution and under very limited circumstances." *Whiley v. Scott*, 79 So. 3d 702, 723 (Fla. 2011) (Polston, J., dissenting) (collecting cases). But even though the writ's application at common law is narrow, the Florida Supreme Court has acknowledged that some of its prior decisions have untethered the use of the writ somewhat from its "common law moorings." *See, e.g.*, *W. Flagler*, 382 So. 3d at 1287 ("[O]ver time, the use of the writ has drifted from its common law moorings."); *Richardson v. Sec'y, Fla. Agency for Health Care Admin.*, 395 So. 3d 500, 506 (Fla. 2024) (Francis, J., concurring) (characterizing the petition denied by the Court in that case as "the quintessential example of a petition availing itself of the runaway nature of our quo warranto precedent"). Still, the supreme court has made clear that "an 'essential feature' of quo warranto is that it should be 'used to challenge the authority to exercise a state power rather than the merits of the action.'" *Richardson*, 395

an appellate court to affirm a trial court that reaches the right result, but for the wrong reasons so long as there is any basis which would support the judgment in the record." (citation modified)).

So. 3d at 504 (quoting *W. Flagler*, 382 So. 3d at 1287). Here, Bailey did not show that another adequate remedy was unavailable to him to challenge the merits of the Governor's executive action. As explained below, there was at least one.

By Executive Order 23-159, Governor DeSantis, through his authority under section 114.01(2), Florida Statutes, declared a seat vacant on the Crescent City Commission, Group 2. The seat was deemed vacant under section 114.01(1)(h), Florida Statutes, which provides that a vacancy in office occurs upon the failure of a person elected to office to qualify for office within thirty days from the commencement of the term of office. The Governor determined that Bailey failed to qualify for office because he was a convicted felon and thus not qualified to hold office. *See* Art. VI, § 4(a), Fla. Const. ("No person convicted of a felony . . . shall be qualified to vote or hold office until restoration of civil rights.").

Bailey argues that the Governor exceeded his executive authority when he declared a vacancy in office[2] because even though Bailey had been convicted of a federal felony, his right to hold office had been restored in Missouri by operation of a Missouri statute. Bailey asserted that Missouri's statutory restoration of his right to hold office should be given full faith and credit under Article IV, Section 1 of the United States Constitution, making him qualified to hold office in Florida.

Section 114.01(1) defines when a vacancy in office occurs, and section 114.01(2) authorizes the Governor to issue an executive order declaring an office vacant. None of this is in dispute. Bailey's petition focuses not on the Governor's authority to declare a vacancy in office but on the Governor's interpretation of what it means to qualify for office under section 114.01(1)(h). Rather, Bailey advances a constitutional argument to challenge the Governor's interpretation, contending that he was qualified to hold

_____

[2] Bailey imprecisely characterizes the Governor's action as "removing" him from office. The Governor did not exercise his executive power to remove a public official from office under Article IV, section 7 of the Florida Constitution. Rather, the office was deemed vacant under section 114.01(1)(h).

office despite his felony conviction because his civil rights had been restored by operation of a Missouri statute and that Florida had to give full faith and credit to that restoration. Indeed, Bailey pleaded in his original petition—which is not materially different from his amended petition—that "his petition presents wholly legal issues of constitutional magnitude." But no matter how his arguments are characterized, his petition challenges the Governor's exercise of the authority to declare a vacancy in office, not the existence of that authority. *See W. Flagler*, 382 So. 3d at 1287 (explaining that quo warranto is available to "challenge the authority to exercise a state power rather than the merits of the action"); *State v. Tampa Waterworks Co.*, 47 So. 358, 359 (Fla. 1908) (observing that quo warranto was designed to determine "the existence of authority, not the proper exercise of it"). Quo warranto is not the proper vehicle for that challenge. *See W. Flagler,* 382 So. 3d at 1287 ("We have never used the writ to test the substantive constitutionality of a statute, and we decline Petitioners' implicit invitation to expand the scope of the writ here. To do so would serve as an affront to an essential feature of quo warranto.").

Moreover, Bailey had a proper vehicle available to him—he could have sought a declaratory judgment under section 86.101, Florida Statutes. *See, e.g.*, *Chiles v. Phelps*, 714 So. 2d 453, 457 (Fla. 1998) ("We have stated that under ordinary circumstances, the constitutionality of a statute should be challenged by way of a declaratory judgment action in circuit court."); *Martinez v. Scanlan*, 582 So. 2d 1167, 1170 (Fla. 1991) (explaining that the purpose of the declaratory judgment act is to "afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations, and it should be liberally construed"). Indeed, declaratory judgment actions are routinely used to challenge the Governor's executive orders. *See, e.g.*, *Bass v. Askew*, 342 So. 2d 145, 146 (Fla. 1st DCA 1977) (declaring that the Governor's executive order suspending a county commissioner was insufficient and that the Governor lacked the right to amend the order of suspension). Because an adequate remedy was available, the trial court did not err when it declined to issue the writ. *See State v. Duval Cnty.*, 141 So. 173, 176 (Fla. 1932) ("It is one of the fundamentals of procedure in quo warranto that the writ will not be issued where there is another ample and sufficient remedy provided by law for the relief sought.").

13

_____

Mark Herron of Messer Caparello, P.A., Tallahassee, for Appellant.

Nicholas J.P. Meros of Shutts & Bowen LLP, Tallahassee, for Appellee Ron DeSantis.